THE CITY OF CAIRO

*v.*

FREDOLINE BROSS.

*Filed at Mt. Vernon January 18, 1882.*

| 101 | 475 |
| 128 | 476 |
| 101 | 475 |
| 35a | 653 |
| 101 | 475 |
| 137 | 670 |
| 101 | 475 |
| 46a | 445 |
| 101 | 475 |
| 172 | 219 |
| 101 | 475 |
| 176 | 140 |
| 101 | 475 |
| e112a1 | 98 |

1. MUNICIPAL CORPORATIONS—*power to require the taking out of license for certain occupations and kinds of business—construction of the general Incorporation act.* Where the legislature, by the general Incorporation act, declares that the corporate authorities of cities and villages organized and acting under its provisions shall have power to license certain occupations and kinds of business, specifically enumerating them, such declaration, by a familiar rule of construction, must be construed precisely as if the law, in express terms, inhibited the licensing of all trades and occupations not contained in the enumeration.

2. SAME—*uniformity of organization is the purpose of the general law.* The object of the general Incorporation law is to place all cities, towns and villages organized under it, and of the same grade, upon a uniform and common footing with respect to their corporate powers and the manner of exercising them.

3. SAME—*reörganization under general law—effect upon prior powers and ordinances under special charters.* It was not intended that a change of organization by a city, from its special charter to the general Incorporation law, should at all affect its corporate existence or liabilities, nor

that its existing powers or government should be changed or otherwise affected, except so far as the provisions of the general law differed from those of the old charters. So far as their provisions are substantially the same, or not inconsistent with each other, they, together with all ordinances based thereon, are to be continued in force.

4.  But after such reörganization by a city or village, any laws in its special charter, or otherwise, in conflict with the general law, no longer apply to it under its new organization.

5.  The provision in the general Incorporation law of cities and villages, that "all ordinances, resolutions and by-laws in force in any city or town where it shall organize under this act, shall continue in full force and effect until repealed or amended, notwithstanding such change of organization," was intended to continue in force only such ordinances, etc., adopted under a special charter, which might lawfully be passed under the general law.

6.  SAME—*as to power to require merchants to take out license.* Under the general Incorporation law, a city organized under its provisions has no power to require merchants to take out a license, and an ordinance so requiring a license, adopted under its special charter before its reörganization under the general law, will cease to have any binding force.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Alexander county; the Hon. DAVID J. BAKER, Judge, presiding.

Messrs. GREEN & GILBERT, for the plaintiff in error:

The special charter of the city of Cairo, in force at the date of the reörganization under the general Incorporation law, gave the city express power to license, tax and regulate merchants. While it is true the general law grants no such express power, it is equally true that it is silent, and does not in any manner prohibit the exercise of such power. On the contrary, the general act (art. 5, sec. 1, item 4,) expressly gives the council power "to fix the amount, terms and manner of issuing and revoking licenses," generally.

The power to license merchants is not inconsistent with the powers granted by the general law, and the ordinance on that subject is therefore preserved, under sec. 6, art. 1, of that law. A general law does not operate to repeal a special

law on the same subject, although passed at the same session.    78 Ill. 549.

In the case of two affirmative statutes, one does not repeal the other, if both may consist together.    77 Ill. 271.

Messrs. LINEGAR & LANSDEN, for the defendant in error:

The general law repealed the power to tax and license merchants.    *Law et al.* v. *People,* 87 Ill. 387; *People* v. *Cooper,* 83 id. 585; *Culver* v. *Third National Bank,* 64 id. 528; *Andrews* v. *People,* 75 id. 605; *Devine* v. *Comrs. of Cook Co.* 84 id. 590.

Counties and cities are alike subject to the control of the legislature; and has not the legislature, in effect, completely revised and recast the charter of the city of Cairo, by its passage of the general act allowing it to change its organization from the old to the new act?

Again, what was the object of the constitution in providing that no city should be organized, or have its charter changed or amended, except by a general law passed for that purpose? The Supreme Court has said that the object was to bring about a uniformity of organization on the part of cities. There is a like provision relative to counties.    *Devine* v. *Commissioners, etc. supra,* and *Guild* v. *City of Chicago,* 82 Ill. 472.

In case of two statutes relating to the same subject, and not in terms repugnant or inconsistent, if the later statute is clearly intended to prescribe the only rule which should govern in the case, this will be construed as repealing the original act.    *Sacramento* v. *Bird,* 15 Cal. 294; *State* v. *Conkling,* 19 id. 501; *Swan* v. *Buck,* 40 Miss. 268; *School District.* v. *Whitehead,* 13 N. J. 290; *Plank Road* v. *Allen,* 15 Barb. 15.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This was an action originally instituted by plaintiff in error before a police magistrate, to recover from defendant in error a penalty of $10, imposed by an alleged ordinance of the city

478   City of Cairo *v.* Bross.   [Jan.

Opinion of the Court.

of Cairo for carrying on the business of a merchant within the corporate limits of the city without having first procured a license for that purpose, as required by the provisions of the ordinance. There was a judgment for the defendant before the magistrate, and the city appealed to the circuit court, where a similar conclusion was reached. The city thereupon prosecuted an appeal to the Appellate Court for the Fourth District, where the judgment of the circuit court was affirmed, and the case now comes here on error from the Appellate Court.

It appears that the city of Cairo, in 1867, was organized under a special act of the legislature, by the provisions of which it was authorized to license a number of trades and occupations, including that of *merchants.* In the exercise of this power, the city council passed an ordinance requiring all merchants doing business within the corporate limits of the city to procure licenses for the carrying on of such business, and imposing a penalty of $10 for every breach of such ordinance. In January, 1873, plaintiff in error, in pursuance of a vote of the qualified voters of the city, was reörganized under the general Incorporation law relating to cities and villages, and from thence until the present time has been acting under the same.

While the general Incorporation law authorizes the corporate authorities of the city to license certain trades and occupations, yet it does not, like the special charter of 1867, authorize the licensing of *merchants,* and in this respect we regard the two acts as in conflict. When the legislature, by the general Incorporation act, declares that the corporate authorities of cities and villages organized and acting under its provisions shall have power to license certain occupations and kinds of business, specifically enumerating them, such declaration must, by a familiar canon of construction, be construed precisely as if the act in express terms inhibited the licensing of all trades and occupations not contained in

the enumeration.   In discussing this principle, the Supreme Court of the United States, in *Thomas* v. *West Jersey Railroad Co.* 101 U. S. 82, says:   "Conceding the rule applicable to all statutes, that what is fairly implied is as much granted as what is expressed, it remains that the charter of a corporation is the measure of its powers, and that the enumeration of those powers implies the exclusion of all others."

Applying the principle to the several provisions of the general and special charters, with respect to the question under consideration, they are clearly inconsistent with each other; for the special charter, as we have already seen, in express terms confers the power to license merchants, while the general charter, by necessary implication, denies it.   By section 6, art. 1, of the latter act, it is expressly provided that after such reörganization under the general law, all laws in conflict with its provisions shall no longer be applicable to the municipality under its new organization.   The two acts being inconsistent in the respect mentioned, it follows that the provision in the special charter authorizing the licensing of merchants ceased to have any application to the city upon the change in its organization.   The practical effect of this was to leave the ordinance under which the defendant in error was prosecuted, without any power or authority to support it.

. It is urged, however, that notwithstanding the provision in the special charter authorizing the taxing of merchants ceased to be applicable to plaintiff in error upon the change in its organization, still, by an express provision in the general law, the ordinance itself is continued in force, and fully authorized a conviction.   The provision relied on as sustaining this view is found in section 11, art. 1, of the general Incorporation act, and is as follows: "All ordinances, resolutions and by-laws in force in any city or town when it shall organize under this act, shall continue in full force and effect until repealed or amended, notwith-

standing such change of organization." While this view, at first blush, may seem plausible, yet we are of opinion that a fair construction of the language used, when taken in connection with section 6 of same article, which we have just been considering, does not sustain it. Doubtless, all that was intended by this provision was to continue in force all ordinances, resolutions, etc., adopted under a special charter, which could lawfully be passed under the general Incorporation law. The construction contended for would lead in this case, as in many others that might be suggested, to the illogical and absurd result that the legislature would intentionally repeal or abrogate a law authorizing the passage of an ordinance, and by another provision in the same act continue in force the ordinance itself, and also to the further result that a city or village reörganized under the general Incorporation law might have ordinances in force which the corporate authorities might repeal, or not, at their own pleasure, and yet if once repealed would have no authority to reënact them. We can not believe the legislature ever intended, by the provision in question, to bring about such a state of things.

It is said by Mr. Dillon, in his work on Municipal Corporations, sec. 20 (1st ed.): "General incorporation acts, rather than special charters, would seem, clearly, to be the best method of creating and organizing municipal corporations: 1. It tends to prevent favoritism and abuse in procuring extraordinary grants of special powers. 2. It secures uniformity of rule and construction. 3. All being created and endowed alike, real wants are the sooner felt and provided for, and real grievances the sooner redressed." Now, since the construction contended for would evidently defeat some of the objects the legislature may reasonably be presumed to have had in view in adopting the general Incorporation law, as shown by this distinguished author, it affords the most satisfactory evidence that such construction is not the true

one. If, as claimed, the legislature intended to continue in force, after reörganization under the general law, all ordinances passed under special charters, without regard to whether any power is contained in the general law to support them, then the reörganization under the general law, so far from tending to "uniformity of rule and construction," would lead to the very reverse,—indeed, it would lead to great confusion and the most embarrassing complications. Under such a state of things, in every case where the question in controversy depended upon whether a particular ordinance passed under the old charter was in force or not, before one would be safe in arriving at a conclusion upon the subject he would necessarily have to examine both charters, and all ordinances passed under them subsequent to the original ordinance. This would not only involve the loss of much time and labor, but the conclusion reached, from the very nature of the case, would sometimes, if not often, be attended with more or less doubt and uncertainty. The construction we have given the act will obviate most, if not all, the inconveniences and evils that would inevitably result from the contrary view. In short, we are of opinion that it was the object of the legislature, in adopting the general Incorporation law, to place all cities, towns and villages organized under it, and of the same grade, upon a uniform and common footing with respect to their corporate powers and the manner of exercising them.

It was known to the legislature, at the time of the adoption of this act, that all the cities, and many of the towns, in the State, were incorporated under special charters, widely differing, in many cases, in their provisions. While some of the powers conferred by these charters were common to all of them, yet many of them were not. Upon adopting a general law on the subject, the legislature, as might have been expected, incorporated into it most of the powers to be found in the then existing special charters; but many of them, as in the case at bar, were omitted. The legislature did not see

31—101 ILL.

proper to directly repeal all special charters, but incorporated a provision in the general law by which existing corporations might abandon their special charters, and reörganize under the general Incorporation act. It was not intended that this change should at all affect the corporate existence or liabilities of the municipalities availing themselves of its benefits, nor was it intended that their existing powers or governments should be changed or otherwise affected, except in so far as the provisions of the general law differed with those of the old charters. So far as their provisions were substantially the same, or in other words not inconsistent with each other, they, together with all ordinances based thereon, were, by virtue of the 6th and 11th sections of art. 1, above mentioned, continued in force, in the same manner as if no change in the organization had taken place.

But it is objected that this would have been the result, under the circumstances supposed, without any special provisions in the general act to that effect, and that such a construction simply renders the provisions of sections 6 and 11, above cited, superfluous. Without stopping to determine whether this is so or not, it is sufficient to say that even admitting that the same result would, on general principles, have been reached without these sections, it does not at all follow that the object of the legislature in adopting them was different from that we have stated; for the legislature often, by way of giving a construction to a statute, declares, by a specific provision, that certain effects or consequences shall result from it, which, under a proper construction, would clearly flow from the act without the aid of such specific provision. Special provisions of this character are inserted to obviate all doubt as to the real objects of the legislature in adopting the act.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*