(No. 14446.—Decree affirmed.)
MICHAEL POTSON *et al.* Appellees, *vs.* THE CITY OF
CHICAGO *et al.* Appellants.

*Opinion filed April 19, 1922—Rehearing denied October 21, 1922.*

1. MUNICIPAL CORPORATIONS—*legislative power of municipality is given by statute, only.* As municipalities have no inherent power but derive their existence and all their powers from the General Assembly, they must always be able to point to some statutory provision giving them authority to legislate on a particular subject.

2. SAME—*the statutes giving powers to municipalities must be strictly construed.* Statutes granting powers to municipal corporations are to be strictly construed, and any fair and reasonable doubt as to the existence of such powers is resolved against the corporation claiming the right to exercise them.

3. SAME—*power to license an occupation must be expressly granted or necessarily implied.* A city has no power, except by delegation from the General Assembly, to license any occupation or require the payment of a tax for the privilege of engaging in an occupation, and such power must be expressly granted in the charter or be a necessary incident to a power so granted.

4. SAME—*when a power is necessarily implied.* Where a power is not directly granted it need not be absolutely indispensable to be necessarily implied, but it must be reasonably necessary to make effective a power expressly granted.

5. SAME—*enumeration of powers in article 5 of Cities and Villages act is exclusive of other subjects.* The enumeration of powers of municipal corporations in the clauses of article 5 of the Cities and Villages act excludes all other subjects, occupations or businesses, except nuisances *per se.*

6. SAME—*city cannot require license of restaurant keeper.* The General Assembly has not given to a city or a village any power to require a license of the keeper of a restaurant, and the term "keepers of ordinaries," mentioned in clause 41 of article 5 of the Cities and Villages act, does not include restaurant keepers, as the word "restaurant" has a well known and popular meaning and not having been used must be held to have been intentionally excluded.

7. STATUTES—*words of a statute must be given their ordinary meaning.* The words of a statute are to be taken in their ordinary meaning in the general and popular use unless a different meaning is intended, and such meaning will be accepted by the courts unless clearly wrong.

8. EQUITY—*what necessary to render remedy at law a bar to suit in equity.* To bar a suit in equity against a threatened wrong the remedy at law must be plain, adequate and efficient.

THOMPSON, C. J., and CARTER and STONE, JJ., dissenting.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

SAMUEL A. ETTELSON, Corporation Counsel, (BERTHOLD A. CRONSON, CARL F. LUND, and ALBERT S. O'SULLIVAN, of counsel,) for appellants.

LEWIS F. JACOBSON, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Michael Potson and Rocco de Stefano, administrator of the estate of James Colosimo, deceased, filed their bill in the superior court of Cook county praying for an injunction restraining the city of Chicago, its mayor and chief of police from enforcing against the complainants an ordinance requiring a license to conduct the restaurant of the complainants in that city and from interrupting them in conducting such restaurant business. By leave of court the bill was amended by substituting Stephen A. Malato and Stephen Love, administrators *de bonis non* of the estate of James Colosimo, in place of Rocco de Stefano, and the temporary injunction prayed for was awarded. A motion to dissolve the injunction was denied and an appeal was prosecuted to the Appellate Court for the First District, where the order of the superior court was affirmed. The defendants filed a general demurrer to the bill, and the demurrer being overruled they elected to stand by it, and a decree was entered making the temporary injunction perpetual and granting the relief prayed for in the bill. The trial judge certified that the validity of an ordinance was involved and allowed an appeal to this court.

The facts alleged in the bill and admitted to be true for the purposes of the demurrer are as follows: In 1911 an ordinance was passed by the city council of the city of Chicago as a part of the municipal code purporting to require a license for keeping a restaurant, and two sections of the ordinance were amended in 1920. The ordinance provided that no person, firm or corporation should exercise within the city of Chicago the business of keeping a restaurant without first securing a license and paying therefor a fee of $15 per annum. The license was to be issued upon an application accompanied by a bond, and the ordinance provided that any license might be revoked by the mayor by notice in writing whenever it should appear to his satisfaction that the person licensed had violated the provisions of any law of the State of Illinois or of that or any other ordinance of the city relative to the keeping of restaurants or any condition of the bond. A penalty was imposed for keeping a restaurant without procuring a license, with progressive penalties for continuing such violation. About the year 1913 James Colosimo opened the restaurant in Chicago owned by the complainants when the bill was filed and invested more than $10,000 for fixtures and equipment to conduct the business. The restaurant was an immediate and continued success. About the year 1915, owing to the great increase in popularity and patronage of the restaurant, Colosimo rented additional room and enlarged the restaurant, and in so doing invested more than $15,000. The restaurant became known throughout the United States and the service was of the highest grade and quality and the food of the best kind. Colosimo took into partnership with him the complainant Michael Potson, and the total investment in the premises and equipment was increased to about $75,000. Colosimo died about May 11, 1920, when the business was worth at least $100,000, and it was continued after the death of Colosimo by Potson and the administrator of the estate of Colosimo represent-

ing that estate. The restaurant had been operated under a license obtained from the city of Chicago, as provided by the ordinance, until October 27, 1920, when police officers, acting under orders of the mayor and chief of police, removed the restaurant license from the wall of the restaurant at a time when more than 100 patrons were at the tables being served. For several days thereafter uniformed policemen, by the order of the mayor, were stationed inside of the restaurant to prevent its being opened, and thereafter the restaurant was kept closed by the mayor and chief of police and the defendants threatened to forcibly prevent the opening of the premises as a restaurant and it remained closed. The business had been thoroughly advertised at an expense of about $18,000 annually, and it had acquired a large and valuable good will. The entire investment in the restaurant, of the value of over $100,000, would be lost unless the complainants could resume their business, and the police of the city were financially unable to respond to the damages that complainants would sustain.

That portion of the governmental powers of the State which is legislative in its character is vested by the constitution in a General Assembly, which may exercise such power directly or may create municipalities and delegate legislative authority to them. It may give or withhold such authority for purposes of local government and take away any such power at its pleasure. Local municipalities derive not only their existence but all their powers from the General Assembly, and having no inherent power they must always be able to point to the particular statutory provision giving them authority to legislate on a particular subject. The settled rule is that statutes granting powers to municipal corporations are to be strictly construed, and any fair and reasonable doubt as to the existence of such powers is resolved against the municipal corporation claiming the right to exercise them. A city having no power, except

304—15

by delegation from the General Assembly, to license any occupation or require the payment of a tax for the privi·lege of engaging in it, the power must be expressly granted in the charter or be a necessary incident to a power so granted. Where the power is not directly granted it need not be absolutely indispensable but it must be reasonably necessary to make effective a power expressly granted. (*Wilkie* v. *City of Chicago*, 188 Ill. 444; *City of Chicago* v. *M. & M. Hotel Co.* 248 id. 264; *City of Chicago* v. *Ross*, 257 id. 76; *People* v. *City of Chicago*, 261 id. 16; *City of Chicago* v. *Mandel Bros.* 264 id. 206; *Condon* v. *Village of Forest Park*, 278 id. 218.) Article 5 of the Cities and Villages act (Laws of 1919, p. 279,) gives to the city council and cities so much legislative power as is specified in 100 separate clauses, and this enumeration is the exclusion of all other subjects. (*City of Cairo* v. *Bross*, 101 Ill. 475.) The express enumeration of the occupations or businesses not nuisances *per se* over which the city is given control is an exclusion of all other occupations or businesses. (*People* v. *City of Chicago, supra.*) The power to legislate on a given subject and to enact an ordinance need not be derived from a single item of the enumeration but may be derived from several, but the power must be either expressly delegated or necessarily implied from those expressly given. *Gundling* v. *City of Chicago*, 176 Ill. 340; *Spiegler* v. *City of Chicago*, 216 id. 114; *Goodrich* v. *Busse*, 247 id. 366.

The city claims the right to pass the ordinance in question and to license, tax, regulate, suppress and prohibit restaurants under clauses 41, 50, 53 and 91 of the Cities and Villages act, which are as follows:

"*Forty-first*—To license, tax, regulate, suppress and prohibit * * * keepers of ordinaries * * * and to revoke such license at pleasure.

"*Fiftieth*—To regulate the sale of meats, poultry, fish, butter, cheese, lard, vegetables, and all other provisions, and

to provide for place and manner of selling the same and to control the location thereof.

"*Fifty-third*—To provide for and regulate the inspection of meats, poultry, fish, butter, cheese, lard, vegetables, cotton, tobacco, flour, meal and other provisions.

"*Ninety-first*—To tax, license and regulate  *  *  * coffee houses."

The particular clause relied upon is the forty-first, conferring power to license keepers of ordinaries, and the argument is based upon the alleged ground that an ordinary is a restaurant. To agree to that proposition would be a departure from every rule for the interpretation of statutes. The established rule is that the intention of the General Assembly must be sought in the words used, and courts have no right to suppose that anything different was intended from what the nature of the words imports. The words of a statute are to be given their usual and popular meaning unless the court is certain that it is following the legislative intent in giving a word a different meaning. The words are to be taken in their ordinary meaning in general and popular use unless a different meaning was intended, and such meaning will be accepted by the courts unless clearly wrong. (*Way* v. *Way,* 64 Ill. 406; *Chudnovski* v. *Eckels,* 232 id. 312; *Culver* v. *Waters,* 248 id. 163.) When the Cities and Villages act became a law the word "restaurant" was in constant use, and had, and still has, a well known and popular meaning. The restaurant was not then, and has not since at any time been, known as an "ordinary." A restaurant never having been advertised or known as an ordinary or called by that name, and there being an entire absence of any reason for supposing that the General Assembly intended restaurant in the use of the word "ordinary," there is no necessity for resorting to lexicographers to ascertain the meaning of the word "ordinary," although there is no dictionary giving a definition of an "ordinary" which would include a restaurant.

It is clear that clauses 50 and 53, relating to regulating the inspection and sale of certain food products, have no reference to licensing restaurants. General authority is given to regulate the police, to pass and enforce all necessary police ordinances, and to do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease, and these general powers may be called into exercise to make effective the powers expressly given, but they are limited to that object. The General Assembly has not given to a city or a village any power to require a license of the keeper of a restaurant, and for want of such power the ordinance was null and void. The act of the mayor and chief of police in closing the restaurant and preventing the prosecution of the complainants' business was unlawful.

The bill alleged that the policemen who invaded the premises and were on guard to prevent opening and conducting the business were insolvent, but whether they were or not or whether those by whose direction they acted were able to respond in damages, the facts stated showed that there was no adequate and efficient remedy at law. The recovery of damages for any wrong is the purpose and effect of a suit at law, but such remedy must be plain, adequate and efficient to prevent interference by a court of equity against a threatened wrong. The facts alleged and admitted by the demurrer show that unless the defendants should be restrained from their threatened action to keep the restaurant closed and destroy the business the complainants would suffer irreparable injury. It is apparent that any remedy at law would fall short of what the complainants are entitled to for the protection of their right.

The decree is affirmed.                    *Decree affirmed.*

THOMPSON, C. J., and CARTER and STONE, JJ., dissenting.