(No. 16022.—Judgment affirmed.)
THE CITY OF CHICAGO, Appellee, *vs.* PATRICK MURPHY, Appellant.

*Opinion filed June 17, 1924—Rehearing denied October 10, 1924.*

1. MUNICIPAL CORPORATIONS—*general power of legislature is not given to city councils.* The fact that the State legislature is vested with all powers not taken from it by the State or Federal constitution does not confer such authority upon city councils or give them the right to exercise the police power of the State in the absence of a statute conferring such power.

2. SAME—*municipalities derive their existence and powers from legislature.* Municipal corporations have no inherent powers but they are creatures of the State legislature and derive their existence and all their powers therefrom.

3. SAME—*power to license or tax an occupation must be expressly granted.* Power in a city to license or tax an occupation must be expressly granted by the legislature or be a necessary incident to a power expressly granted.

4. SAME—*legislative power of cities is confined to subjects enumerated in article 5 of the Cities and Villages act.* The legislative powers of city councils are enumerated in section 1 of article 5 of the Cities and Villages act, and such enumeration is an exclusion of all other subjects.

5. SAME—*what does not invalidate ordinance to regulate sale of certain beverages.* The exercise of power given to the city council to regulate the business of the sale of certain beverages will not be denied because the ordinance includes some other articles or beverages which are not covered by the legislative grant of power to the city.

6. SAME—*the Cities and Villages act authorizes regulation of sale of certain non-intoxicating beverages.* The purpose of paragraph 46 of section 1 of article 5 of the Cities and Villages act is to empower city councils to license the business of selling liquors of different kinds which are there enumerated, and includes the regulation of the sale of malted, cereal or vinous non-intoxicating beverages as well as those which are intoxicating.

7. JUDICIAL NOTICE—*courts will not take judicial notice of existence of evil tendency in lawful business.* Courts will take judicial notice of that which is generally known to be true, but they will not take judicial notice of the existence of a public evil in the lawful business of selling non-intoxicating liquors or that such business is coupled with the illegal sale of intoxicating liquors.

APPEAL from the Municipal Court of Chicago; the Hon. JOEL FITCH, Judge, presiding.

THOMAS D. NASH, and MICHAEL J. AHERN, for appellant.

FRANCIS X. BUSCH, Corporation Counsel, ALBERT H. VEEDER, SAMUEL E. PINCUS, and ELIOT H. EVANS, (FRANCIS J. VURPILLAT, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

The question involved in this case is the validity of an ordinance of the city of Chicago known as an ordinance relating to retail beverage dealers. The first section defines retail beverage dealers to include any person, firm or corporation selling, offering for sale or keeping with the intention of selling at retail, either in bottles or other containers, for consumption on the premises, "any malted, cereal or vinous non-intoxicating beverages as defined by law, or any soft drinks, carbonated beverages, fruit juices, water, milk, buttermilk, chocolate, tea, bouillon or other beverages." The second section of the ordinance provides that it shall be necessary to first obtain a license for each room, stand, place or enclosure, or suite of rooms or enclosures, before engaging in the business of retail beverage dealer. The third section fixes the fees and divides retail beverage dealers into two classes. Class "A" includes those handling any and all of the beverages named, including "malted, cereal or vinous non-intoxicating beverages as defined by law." The annual fee for this class of dealers is fixed at $100. Class "B" includes beverage dealers dealing in the beverages mentioned in the first section of the ordinance but not including "malted, cereal or vinous non-intoxicating beverages as defined by law." The fee for this class of dealers is fixed at $5 per year, with certain specified increase therein for increase of seating capacity. This section also provides that in case an ice cream parlor or coffee

house or ordinary is conducted in the same establishment mentioned in either class "A" or "B," the owner thereof is required to take out but one license, which shall be that which requires the payment of the highest license fee under any one of the three license ordinances. The fourth section specifies the method of application for a license. It requires that the dealer answer certain questions concerning the length of time of residence in the city, place of previous employment, whether he is married or single, whether he has ever been convicted of a felony or misdemeanor or ever summoned into court under criminal proceeding, which application shall be sworn to. After the filing thereof the same is to be referred to the superintendent of police for investigation. The fifth section provides that any individual licensee or corporation who shall permit the violation of the city ordinances within the licensed establishment shall for the first offense have his license suspended for a period of thirty days; for a second offense a suspension for sixty days; and upon a third violation the license shall be revoked. The sixth section provides a fine for violating the provisions of the ordinance.

It is evident from the language of the ordinance that it is a regulatory rather than a merely revenue measure. The appellant was summoned to appear under charge of a violation of the ordinance, and filed his answer admitting that he is a dealer in all of the different beverages which are detailed in the first section of the ordinance, but setting up that the ordinance is invalid. The appellee moved to strike the answer, which motion was allowed by the court. As appellant elected to stand by his answer, he was found guilty and a fine of $100 was assessed against him. The cause comes here on the certificate of the trial judge that the validity of an ordinance is involved.

The question in the case is whether power rests in the city council to pass this ordinance. Section 1 of article 5 of the Cities and Villages act (Smith's Stat. 1923, p. 222,

*et seq.*) defines the powers of a city council. That section contains one hundred paragraphs. The fourth paragraph gives to city councils the power "to fix the amount, terms and manner of issuing and revoking licenses." The forty-sixth paragraph, so far as involved here, is as follows: "To license, regulate and prohibit the selling or giving away of any intoxicating, malt, vinous, mixed or fermented liquor, the license not to extend beyond the municipal year in which it shall be granted, and to determine the amount to be paid for such license." Appellant contends that this section applies only to intoxicating beverages while the ordinance applies to non-intoxicating beverages, and that the section of the statute, therefore, does not authorize the ordinance.

Cities may exercise only such powers as are expressly delegated to them by the legislature. The legislature is vested with all powers not taken from it by the State or Federal constitution. Many of its powers may be delegated by it to the cities created by its act. Cities are creatures of the legislature and derive their existence therefrom. They have no inherent powers. All powers of cities are derived from acts of the legislature. The fact that the legislature has the power to enact a law does not confer that power upon city councils but the same must be by legislative act conferred. It has been many times held that power in a city to license or tax an occupation must be expressly granted to it by the legislature or be a necessary incident to a power expressly granted. (*Potson* v. *City of Chicago,* 304 Ill. 222; *Condon* v. *Village of Forest Park,* 278 id. 218; *City of Chicago* v. *Mandel Bros.* 264 id. 206; *People* v. *City of Chicago,* 261 id. 16; *City of Chicago* v. *Ross,* 257 id. 76; *City of Chicago* v. *M. & M. Hotel Co.* 248 id. 264.) Section 1 of article 5 of the Cities and Villages act, in the one hundred paragraphs referred to, is the source of legislative power of the city council. Its powers are there enumerated to the exclusion of all other subjects. *City of Cairo* v. *Bross,* 101 Ill. 475.

Appellant relies on *Potson* v. *City of Chicago, supra,* as authority for the contention that the city cannot require a license of retail beverage dealers. That case is in nowise conclusive of the question whether there is embraced within the powers enumerated in section 1 of article 5 of the Cities and Villages act the power to license and regulate retail beverage dealers. In the *Potson case* we were considering an ordinance attempting to license restaurants. It was urged on behalf of the city that the right to license restaurants was to be found in the forty-first paragraph of said section, authorizing the licensing of keepers of ordinaries. It was there held that an ordinary is not a restaurant, and that the right to license ordinaries did not confer the right to license restaurants. The question here is whether or not the forty-sixth paragraph of said section, conferring on city councils power to "license, regulate and prohibit the selling or giving away of any intoxicating, malt, vinous, mixed or fermented liquor," empowers it to license, regulate or prohibit the sale of "malted, cereal or vinous non-intoxicating beverages as defined by law."

Counsel for appellee contend that the power to pass the ordinance is derived as a necessary incident to the power given the city to protect the morals, health and safety of the public. The record in this case does not show that the morals, health and safety of the public are involved. It is, however, argued that this court will take judicial notice that the sale of malted, cereal or vinous beverages is conducted principally by the so-called "soft drink parlors," in which there is often sold illegal intoxicating liquor, and that therefore the matter of public morals, safety and health is involved. Courts are presumed to be no more ignorant than the public generally, and will take judicial notice of that which everyone knows to be true. It does not follow, however, that courts shall take judicial notice of the existence of a public evil in the lawful business of selling non-intoxicating liquors or that such business is coupled with

the illegal sale of intoxicating liquor. Whether or not the legislature has power to regulate the business of retailing non-intoxicating beverages is not the first question for consideration. That question is whether or not it has by law delegated that power to city councils. The fact that the State may exercise the police power in a given case does not confer upon a city the right so to do in the absence of a provision of the statute conferring such power.

If appellee's position is to be sustained it must be done on the ground that the statute expressly or by necessary implication empowers cities to regulate the business of selling "malted, cereal or vinous non-intoxicating beverages as defined by law." It is not contended by appellee that paragraph 46 of said section 1 enumerates or brings within its purview beverages other than "malted, cereal or vinous non-intoxicating beverages as defined by law." The power of the city to license, regulate or prohibit selling or having for sale "any malted, cereal or vinous non-intoxicating beverages as defined by law," is not affected by the fact that the ordinance provides also for the licensing of the sale of soft drinks, carbonated beverages, fruit juices, etc. The existence of the power in the city council, if it does exist, to regulate the business of sale of certain beverages is not to be denied because some other articles are included within the ordinance which are not covered by the legislative grant of power to the city. *Purity Extract Co.* v. *Lynch,* 226 U. S. 192; *Kettering* v. *City of Jacksonville,* 50 Ill. 39; *Bradford* v. *Jones,* 142 Ky. 820.

Appellant admits that he is engaged in the business of retailing beverages coming under class "A" of the ordinance. The amount of the license fee is determined by whether the dealer is selling "malted, cereal or vinous non-intoxicating beverages as defined by law." The validity of this ordinance as applied to one who is selling only beverages under class "B," as enumerated in the ordinance, is not, therefore, involved in this case. In other words, the

power of the city council under consideration in this case is the power to license and regulate the so-called soft drink parlors, which have taken the place of saloons, and not the power to license soda fountains and the sale of soft drinks, carbonated beverages, fruit juices, water, milk, buttermilk, chocolate, tea, bouillon or such other beverages.

Appellant contends that the forty-sixth paragraph of section 1 relates only to intoxicating liquors, and in support of that contention cites numerous cases which his counsel contend show that paragraph 46 has never been considered as applying to any other than intoxicating liquors. An examination of these cases will disclose that the questions there involved arose upon the application of the act to cases where the liquor involved was intoxicating and the character of the liquor was not questioned.

The question whether or not paragraph 46 of section 1 applies to other than intoxicating liquors has never been before this court for determination. In *LaFollette* v. *Murray,* 81 Ohio St. 474, the language of the statute authorizing the assessment of a license "upon the business of trafficking in spirituous, vinous, malt or other intoxicating liquors" was construed to apply to a malt liquor containing less than one-half of one per cent of alcohol and not intoxicating. It was there held that the term "malt liquors" includes both non-intoxicating and intoxicating malt liquors. To the same effect is *State* v. *Kauffman,* 68 Ohio St. 635. In *Lawrence* v. *Monroe,* 44 Kan. 607, a city ordinance regulating the sale of non-intoxicating cider was sustained, but on the ground that it was within the power granted by the legislature to enact ordinances for maintaining the peace, good government and welfare of the city and protecting trade and commerce. In *State* v. *Dannenberg,* 151 N. C. 718, an ordinance licensing the selling of near-beer was sustained on the ground that it had become a business in itself, and that the constitution gave to cities the power to

raise revenue by licensing business. Counsel for appellee cite numerous other cases sustaining the power of the city council to pass ordinances regulating the traffic in non-intoxicating beverages. Those cases, however, are based on the wording of particular statutes and are not of special assistance here.

The evident purpose of paragraph 46 is to empower city councils to license the business of selling liquors. "Liquor" therefore becomes the generic term which affords the basis of construction of the language which specifies the power granted. The species of liquor, the sale of which may be licensed, regulated or prohibited by the city council, are, first, "intoxicating" liquor; second, "malt" liquor; third, "vinous" liquor; fourth, "mixed" liquor; and fifth, "fermented" liquor. Liquor is defined by standard lexicographers as a liquid; a fluid substance. The power granted by paragraph 46 is to license and regulate the sale of liquors which are intoxicating and others there named which may or may not be. The power is limited to the species of liquor named in the statute. The city council was by the act authorized to license the business of selling liquor of the different species and varieties referred to in the statute. The language and punctuation thereof used in paragraph 46 show that intoxicating liquor is but one of the species intended to be included. So far as the ordinance in question relates to the liquors referred to in the statute it is valid.

Appellant cites the case of *Village of Westville* v. *Rainwater*, 294 Ill. 409. In that case it was held that the act of a truck driver in delivering at the place of business of a retail purchaser, beverages containing less than one-half of one per cent alcohol by volume could not be licensed or regulated by the village. In that case we say, however, that we are not considering the power of municipalities to require one who keeps a place for the retail of soft drinks to customers to take out a license, as that question was in no way involved.

We are of the opinion that under the power granted by paragraph 46 of section 1 of article 5 of the Cities and Villages act the ordinance in question, in so far as it attempts to regulate the sale of malted, cereal or vinous nonintoxicating beverages as defined by law, is valid.

The judgment of the municipal court is therefore affirmed.

*Judgment affirmed.*