THE CRACKERJACK COMPANY *et al.* Appellants, *vs.* THE
CITY OF CHICAGO, Appellee.

*Opinion filed April 21, 1928—Rehearing denied June 7, 1928.*

MUNICIPAL CORPORATIONS—*business of manufacturing confections is subject to regulation and license by city.* The business of manufacturing candy and confections for the wholesale or retail trade is subject to regulation by city ordinance and a license fee may be required for the purpose of such regulation, as confectionery is properly a "provision" or "food" in universal use, and a proper regulatory ordinance is a valid police regulation when not in conflict with any statute.

APPEAL from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding.

DAVID R. CLARKE, and JOHN HARRINGTON, for appellants.

FRANCIS X. BUSCH, Corporation Counsel, (LEON HORNSTEIN, and RUTH C. NELSON, of counsel,) for appellee.

Mr. COMMISSIONER CROW reported this opinion:

The circuit court of Cook county dismissed the bill of complainants for want of equity. It sought to enjoin the enforcement of an ordinance of the city of Chicago licensing and regulating the business of manufacturing confectioners. Complainants prosecute this appeal.

The bill avers substantially that the four complainants are engaged in business as manufacturing confectioners and sets out the number of square feet contained in their respective factories. It alleges that there are about one hundred and fifty other individuals, firms and corporations engaged in the same business; that there are also from five hundred to one thousand individuals and firms engaged in

manufacture in connection with the sale, at retail, of confectionery, and alleges that all those persons, firms and corporations are claimed by the city to come within the terms of the ordinance set out in the bill.   It sets out sections 1997 and 2003 of the municipal code.   The first section referred to defines a manufacturing confectioner as any person, firm or corporation that carries on or engages in the business of manufacturing, for the purpose of sale to the wholesale or retail trade, any candies, confections, sugar ornaments, taffy apples, candied nuts, shelled nuts or peanuts, marzipan, chewing gum, lozenges, cough drops, fruit or flavored tablets, popcorn or popcorn candy, or any other candies, confectionery or similar products, and provides that no person shall conduct such business without first obtaining a license. Section 1998 requires an application for a license and requires inspection of the premises of a proposed licensee by the commissioner of health.   Section 1999 classifies manufacturing confectioners according to the floor area devoted to manufacturing and storage purposes and provides for a graded license fee based on the floor area.   Section 2000 fixes the license period.   Section 2001 provides for the revocation of a license by the mayor, upon recommendation by the commissioner of health, whenever it shall appear that the licensee has violated the provisions of any law of the State of Illinois or of any ordinance of the city relating to the carrying on of his business.   Section 2002 provides for the sanitary requirements of such establishment.   The last section fixes a penalty for failure to comply with the ordinance.    Prosecutions were begun and others threatened against complainants and others to recover the penalties. The bill charged that the business of complainants is not a business requiring regulation for the sake of the public health, and that said sections of the code are invalid, unconstitutional and void.   They prayed for an injunction restraining the city from enforcing the ordinance.

The city answered the bill, averring, among other things, that the business conducted by complainants is of such a nature that it affects the health of the people at large by reason of the process of manufacture and by reason of the fact that the product of such concerns is used as food, and that many of such manufacturers will not observe health regulations unless rigid inspections and restrictions are enforced; avers that it is necessary for the city to expend large sums of money in making inspections of such manufacturing plants, and denies that the business of manufacturing confectioners does not need to be inspected or regulated for the sake of public health; admits that the city had made demands upon complainants for the payment of the license fees provided for in the code and that it intends to institute prosecutions against complainants for failure to take out licenses as required by the ordinance.

Upon the trial complainants introduced evidence showing the number of concerns engaged in the business and the nature of the products used in their business. Defendant introduced in evidence the testimony of a physician of the health department of the city for the purpose of showing the need of inspection of the business of complainants, promotive of sanitary conditions, materials used in the manufacture of confectionery, the nature of the inspection and of the regulations of the business by the city. The court held that the several sections of the code were valid and enforceable and dismissed the bill for want of equity.

The errors relied on for reversal of the decree are: (1) The city has not been expressly delegated power by the Cities and Villages act to regulate the business of complainants; (2) clause 78 of section 1 of article 5 of the act, giving the city power "to do all acts, make all regulations, which may be necessary or expedient for the promotion of health or the suppression of disease," does not authorize the city to pass the ordinance licensing the business of complainants.

Without setting out *in extenso* the sanitary require-ments of the ordinance, it is sufficient to say that under the sole question presented they are conducive to a healthful environment in the manufacture and handling of confec-tionery. The ordinance is not challenged in that respect nor on the ground that it is not a proper police regulation if a valid ordinance.

The first contention of counsel for appellants is that the city has no inherent power to license occupations, and that the power to license must be found in the charter, expressly granted or as a necessary incident to carry out some power expressly granted. Counsel for appellee do not contend that the city has authority to license occupations except as an incident to regulation.

Reliance is placed by appellants upon *Barnard & Miller* v. *City of Chicago,* 316 Ill. 519, in support of their conten-tion. It defines the licensing power of municipal corpora-tions, with its limitations. Part of the opinion relied on reads: "This court has many times held that power to license or tax an occupation must be expressly granted to cities by the legislature or be a necessary incident to a power expressly granted. (*City of Chicago* v. *Murphy,* 313 Ill. 98; *Potson* v. *City of Chicago,* 304 id. 222; *Condon* v. *Village of Forest Park,* 278 id. 218; *City of Chicago* v. *Mandel Bros.* 264 id. 206; *People* v. *City of Chicago,* 261 id. 16; *City of Chicago* v. *Ross,* 257 id. 76; *City of Chicago* v. *M. & M. Hotel Co.* 248 id. 264.) If the business sought to be regulated does not tend to injure the public health or public morals or to interfere with the general welfare it is not a subject for the exercise of the police power. (*Lowen-thal* v. *City of Chicago,* 313 Ill. 190.) Section 1 of arti-cle 5 of the Cities and Villages act, with its one hundred clauses, is the source of the legislative power of the city council. Its powers are therein enumerated to the exclu-sion of all other subjects.—*City of Chicago* v. *Murphy, supra; City of Cairo* v. *Bross,* 101 Ill. 475."

*Arms* v. *City of Chicago,* 314 Ill. 316, *Lowenthal* v. *City of Chicago, supra, Potson* v. *City of Chicago, supra,* and *City of Chicago* v. *M. & M. Hotel Co. supra,* are also relied on as authorities against the power to pass the ordinance. The ordinances in those cases differ in purpose from that now attacked. The *Arms case* held that the city had no power to require electricians to be licensed. In the *Lowenthal case* it was held that things which may or may not be injurious to the public, according to the manner in which they are managed, conducted and regulated, may be licensed for the purpose of regulation, but a business which has no tendency to injure the public health, affect public morals or interfere with general welfare is not a subject for the exercise of the police power. The clear implication is, if the business tends to affect either, the power to license exists. In the *Potson case* it was held that a city has no power, except by delegation from the General Assembly, to license any occupation or require the payment of a tax for the privilege of engaging in an occupation, and such power must be reasonably necessary to make effective a power expressly granted, therefore restaurant keepers could not be required to take out a license. It was further held that the General Assembly had not given power to cities to require a license of the keeper of a restaurant, and that the term "keepers of ordinaries," mentioned in clause. 5 of section 1 of article 5 of the act, does not include restaurant keepers. In *City of Chicago* v. *M. & M. Hotel Co.* it was held that power to license hotels had not been conferred upon the city, and therefore the ordinance requiring a license to conduct the business was void, but it did not appear that the operation of hotels is attended by danger to the health of employees or patrons, and therefore there was no occasion to license, as an incident to the power to regulate, the business.

It is contended by appellee that the power to license, as limited by the above cases, is applicable and supports the

ordinance now attacked. The insistence is that the ordinance is not one to license the business of appellants as a business or for the privilege of engaging in it, but is in furtherance of the limitations upon the licensing power announced in the cases cited and in numerous other cases from *City of Cairo* v. *Bross, supra,* to the last decision of this court. Appellee justifies the licensing power exercised upon the principle that the business of appellants, if not properly safeguarded, is one tending to injure the public health by the use of deleterious ingredients employed in the manufacture of confectionery and uncleanly environment, and is therefore a proper subject for its exercise under clause 66 of section 1 of article 5 of the Cities and Villages act. The case of *Moy* v. *City of Chicago,* 309 Ill. 242, relied on, among others, by appellee, is said by appellants to stand alone as authority for support of the ordinance now under consideration. It is contended that it is unsupported by any decision preceding or following it. Counsel say: "If the *Moy case* is extended to cover manufacturing confectioners the whole line of decisions of this court will be nullifield. Drug stores, factories, restaurants and hotels can not be licensed because no express power exists. Confectioners can be, and such a result is impossible in view of the decision of this court." They acquiesce in the decision in *City of Chicago* v. *Union Ice Cream Co.* 252 Ill. 311, but say a different question is presented here. The difference between that case and this is really one not more substantial than that between ice cream and candy. Both are manufactured as articles for consumption by man. Sanitary environment and wholesome ingredients are essential in the manufacture of both in the interest of public health. In that case Mr. Chief Justice Carter said: "The laws of the State operate within the limits of municipal corporations the same as elsewhere, unless otherwise clearly provided by municipal charters or statute. Local laws and regulations are at all times subject to the paramount authority of the

legislature. Did the legislature intend by the passage of the Pure Food act in 1907 to deprive municipal authorities of all power to legislate on subjects touched upon or regulated by said act? Clearly not. Said act has certain provisions with reference to milk and its measurement, but this court has held since its passage that a municipality could regulate by ordinance the size of the bottles or jars in which milk was sold. (*City of Chicago* v. *Bowman Dairy Co.* 234 Ill. 294.) There are also many provisions in said Pure Food act with reference to food. We recently held that a municipality could pass an ordinance regulating the sale and weight of bread. (*City of Chicago* v. *Schmidinger,* 243 Ill. 167.) * * * We think it is clear that the Pure Food act was not intended to deprive cities and villages of the authority given by the provisions of article 5 of the City and Village act to regulate and control, by ordinances not in conflict with said Pure Food law, the sale of foods, including such regulation as provided in said section 1160 of the revised municipal code of Chicago. Municipal ordinances must be in harmony with the general laws of the State and with the municipal charter. In case of a conflict the ordinance must give way. The great weight of authority is to the effect that the legislature may confer police power upon a municipality over subjects within the provisions of existing State laws. An act may be a penal offense under the laws of the State, and further penalties, under proper legislative authority, may be imposed for its commission by municipal ordinances. The enforcement of one would not preclude the enforcement of the other."

As was said in that case, the ordinance now considered does not prohibit what the statute permits. There is no repugnancy between them. The general policy underlying both is the promotion of health in the production and sale of wholesome articles eaten by children and adults. In *City of Chicago* v. *Drogasawacz,* 256 Ill. 34, defendant in error was required to take out a license to operate a bak-

ery.  He resisted the requirement and the court below sustained him.  This court, reversing the judgment, held that under clauses 50 and 53 of section 1 of article 5 of the Cities and Villages act the power to "regulate the sale" under the first section, and to provide for and "regulate the inspection" under the second, conferred power to license bakeries.  Bakeries were not mentioned in either clause or in any section, but the power having been conferred to regulate the sale and the inspection of specific articles of food, the general words "all other provisions" and "other provisions" must be construed as applying to articles of food, including bakery products, such products being of the same character as those specifically mentioned.  The reason for sustaining the power to license was: "The power to regulate confers the power to license.  (*Kinsley* v. *City of Chicago,* 124 Ill. 359; *Chicago Packing Co.* v. *City of Chicago,* 88 id. 221; *Gundling* v. *City of Chicago,* 176 id. 340; 2 Dillon on Mun. Corp.——5th ed.——sec. 665.)  Clearly, by its terms this ordinance is not a revenue measure but one to regulate bakeries in said city, the sale of the food products therein and the sanitary conditions under which they are produced."  *Moy* v. *City of Chicago, supra,* rests upon precisely the same principle.  It is an application of the health and police clauses of section 1 of article 5 of the Cities and Villages act.  The power to license was exercised as an incident of the power to regulate the business of laundries.  It had a manifest relation to the purpose.  The principle underlying the exercise of the police power in the conservation of health is thus expressed:  "The ordinance is clearly a health regulation, and the city had authority, under paragraph 78 of the same section, to pass the ordinance.  That paragraph provides that the city shall have power 'to do all acts, make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease.'  This clause gives the city the power to compel any owner or occupant of a building to

keep it in a sanitary condition and to conduct his business so that it will not endanger the health of the employees or of the public. (*City of Chicago* v. *Pettibone & Co.* 267 Ill. 573.) We have held that the city has authority under this provision to regulate the conduct of bakeries (*City of Chicago* y. *Drogasawacz,* 256 Ill. 34,) and the distribution of milk. (*Koy* v. *City of Chicago,* 263 Ill. 122.) Under paragraph 66, which gives cities the power to 'pass and enforce all necessary police ordinances,' the city council is given authority to pass this ordinance to carry out the purposes of paragraph 78. * * * It is manifest that the laundry business is of that character which without proper regulation may create unsanitary and unhealthful conditions, and that by the employment therein of persons suffering from communicable or contagious diseases, or by the improper mixing and laundering of the soiled linens of different people, the health of the public is seriously endangered. There seems to .be no doubt that the city had authority, under paragraphs 66 and 78, to regulate the establishment and operation of laundries and to provide a license fee to care for the additional expense incurred by the city in properly enforcing such regulation."

Counsel say the power to regulate manufacturing confectioners has not been conferred upon cities, and that if the power exists it must be under clause 78. It is further said the licensing of such establishments cannot be justified as a health measure because the regulation provided for is required under State statutes, but they make no reference to any such statute. In *City of Chicago* v. *Drogasawacz, supra,* it was contended that cities had no authority to pass the sanitary provisions contained in the ordinance there in question and to license as an incident thereto, as that subject was fully covered by sections of the statute with reference to the inspection of establishments where food is prepared, manufactured, packed, stored, distributed or sold. It was said in reply to the contention: "Municipal ordi-

nances must be in harmony with the general laws of the State, but this ordinance does not in any way conflict with the State law." The ordinance now under consideration conflicts with no statute to which our attention has been called. The terms of the ordinance confer power to be exercised concurrently with, but which does not conflict with, a like power vested in or exercised by the State.

It is argued that clauses 50 and 53, relied on in part by appellee, not embracing candy and confectionery as subjects of regulation and inspection, afford no authority for regulating or inspecting the business of appellants. But it was held in *City of Chicago* v. *Drogasawacz, supra,* that the general words "and other provisions" in those clauses include bakery products, which clearly are food. Bouvier's Law Dictionary defines "provisions" as food for man; victuals. In *Savage* v. *Jones,* 225 U. S. 501, 56 L. ed. 1182, it was said the word "food," used in the Federal Pure Food law, includes all articles used for food, drink, confectionery or condiment for man or other animals, whether simple, mixed or compound. In the Pure Food act of this State confectionery is included in the catalogue of foods. In *Commonwealth* v. *Pflaum,* 236 Pa. 294, it was said: "No one could contend that sugar and honey are not food or that preserved fruits and chocolate are not nutriment, and these constitute the great bulk of the confectionery manufactured and sold. * * * That the term 'food' includes candy, sweetmeats, preserves and other confectionery, accords with the opinion of lexicographers, chemists and the public understanding."

The universal use of confectionery of all sorts by adults and by children renders it pre-eminently a fit subject for surveillance as an article of commerce under pure food laws and its manufacture and preparation for commerce where it is manufactured. We are of the opinion the ordinance in question is a valid police regulation and within the com-

petence of the city to enact. That is the only question argued or presented by the assignment of errors.

The decree of the circuit court sustaining the demurrer to the bill and dismissing it for want of equity is therefore affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*