(No. 24025.— )

THE PEOPLE *ex rel.* Joseph L. Gill, County Collector, Appellee, *vs.* MERVYN WINSTON BAUM, Appellant.

*Opinion filed October 15, 1937—Rehearing denied Dec. 8, 1937.*

RICHARD C. BECKETT, ADAMS, NELSON & WILLIAMSON, and ADELBERT BROWN, (ROBERT N. HOLT, ROBERT McCORMICK ADAMS, PAUL S. DAVIS, and ROBERT S. CUSHMAN, of counsel,) for appellant.

THOMAS J. COURTNEY, State's Attorney, and BARNET HODES, Corporation Counsel, (MANUEL E. COWEN, WILLIAM T. CRILLY, JACOB SHAMBERG, JOSEPH F. GROSSMAN, OTHO S. FASIG, NORMAN N. EIGER, and J. HERZL SEGAL, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This appeal is from a judgment and order of the county court of Cook county for sale of appellant's property for delinquent 1934 taxes. Appellant's objections to the taxes

were overruled. The constitutionality of an amendment of section 1 of article 8 of the Cities and Villages act, in force July 12, 1935, (Laws 1935, p. 541,) and an amendment of sections 1 and 2 of the act enabling cities and villages to establish and maintain public tuberculosis sanitariums, approved July 1, 1935, (Laws of 1935, p. 505,) is involved. Those amendments purport to authorize cities and villages having a population of 150,000, or more, to levy an increase in the annual tax rate for general corporate purposes and for a municipal sanitarium fund for the year 1934 and thereafter. On March 14, 1934, the city of Chicago passed its annual appropriation ordinance for the fiscal year 1934, in which it appropriated $47,185,499.92 for general corporate purposes, $16,560,000 of which was available from sources other than taxation, and $31,925,386.22 stated to be derived from the 1934 tax levy. Included in the appropriation ordinance was an appropriation of $2,-058,055.15 for municipal tuberculosis sanitarium fund. On April 2, 1934, the city council of the city of Chicago adopted its annual tax levy ordinance for the year 1934 and by it the sum of $31,925,386.22 was levied for general corporate purposes and $1,732,385.30 for municipal tuberculosis sanitarium fund. At the time when the tax levy ordinance was passed, section 1 of article 8 of the Cities and Villages act, (State Bar Stat. 1935, chap. 24, par. 115,) provided for a maximum rate of 1.29 for cities having a population of over 150,000, and the maximum rate permitted at that time for municipal tuberculosis sanitarium was .07. (State Bar Stat. 1935, chap. 24, par. 586.) At that time the total assessed valuation of all the property in the city of Chicago for the year 1934 had not been determined and was not determined until September 3, 1935. It was then found to be $2,274,588,142. This valuation would, at the rate of 1.29, produce but $29,341,800 of the $31,925,386.22 levied. The rate of .07, in force on the date of the passage of the tax levy ordinance, applied to the total assessed valuation

permitted a levy for municipal tuberculosis sanitarium of but $1,592,190.67 of the $1,732,385.30 levied under said levy ordinance.

On July 1, 1935, the General Assembly passed the amendatory act complained of, which will herein be designated as Senate Bill 550, amending section 1 of article 8 of the Cities and Villages act. Senate Bill 550 became effective as a statute on July 12, 1935. As to tax rate limitations for cities and villages of more than 150,000 population, it reads as follows: "Provided, the aggregate amount of taxes so levied for any one year, exclusive of the amount levied for the payment of bonded indebtedness or interest thereon, and exclusive of taxes levied for the payment of judgments for which a special tax shall have been authorized by law and for the purposes of pension funds, working cash fund, public library and municipal tuberculosis sanitarium, in cities and villages of 150,000 or more population according to the last National or State census, for the year 1934 shall not exceed the rate of one and twenty-nine hundredths (1.29) per centum, or the rate that will produce, when extended, the sum of thirty-one million nine hundred and twenty-five thousand dollars ($31,925,000), whichever may be the greater; and for the year 1935 shall not exceed the rate of one and twenty-nine hundredths (1.29) per centum or the rate that will produce, when extended, the sum of thirty-six million dollars ($36,000,000), whichever may be greater; and for the year 1936, and every year thereafter, shall not exceed the rate of one and twenty-nine hundredths (1.29) per centum or the rate that will produce, when extended, the sum of thirty-seven million dollars ($37,000,000), whichever may be greater," etc. The act was made retroactive and the city council was given the right to levy supplemental or additional taxes, based on the amended maximum rates, at any time during the months of July and August, 1935, for the year 1934, without the necessity of any further or other

appropriation, and without any statement of the purposes other than the term "general corporate purposes." It will be observed that this act was passed after the period in which 1934 taxes could be and were, in fact, levied.

On July 1, 1935, the General Assembly amended sections 1 and 2 of the Municipal Tuberculosis Sanitarium act to empower cities and villages of more than 200,000 population to levy at a rate not to exceed .07, or a rate which would produce, when extended, an amount not to exceed $2,500,000, whichever was greater, for the years 1934 and the years following. This amendment also provided that the tax rate thereby authorized should be retroactive.

Pursuant to these amendments, the city of Chicago, on August 2, 1935, by its city council, adopted a supplemental tax levy ordinance for the year 1934 for corporate purposes, levying a sum which, together with the taxes theretofore levied on April 2, 1934, should be not less than the sum of $31,925,000. Pursuant to the amendment of the Municipal Tuberculosis Sanitarium act, and within the time fixed by that amendment, the city council of the city of Chicago passed supplemental appropriation and levy ordinances. Section 2 of the latter provided that the taxes thereby levied, together with taxes previously levied for the year 1934, should be not less than $2,500,000. The county clerk extended taxes for corporate purposes at a total rate of 1.403586, and for municipal tuberculosis sanitarium at a total rate of .109911, which would produce $2,498,989.

Appellant's objections are to the general corporate purpose levy in excess of the rate of 1.29, and the municipal tuberculosis sanitarium levy in excess of the rate of .07. It is contended on this appeal, (1) that the acts are in substance validating acts and, as such, are void as an attempted levy by the General Assembly; (2) that they violate section 22 of article 4 of the constitution of 1870 which forbids the General Assembly from passing local or special

laws granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever, and from passing a special law when a general law can be made applicable, and also contravene the due process of law requirements of the State and Federal constitutions; (3) that they attempt to operate retroactively after the time the law required the tax books to be delivered to the collector and after the statutory lien had already attached to the property, and, (4) they deny appellant equal protection of the laws.

Considering the first contention, the following appears: At the time of the passage of the tax levy ordinance the maximum rate for general corporate purposes for the city of Chicago was 1.29 and for municipal tuberculosis sanitarium the maximum rate was .07. The acts in question became effective after July 1, 1935. The long established rule is, and has been, that the maximum rate authorized at the time taxes are levied by the taxing body authorized so to do, and not the rate permitted or authorized at a subsequent date, is the rate that controls. (*People* v. *Chicago and Northwestern Railway Co.* 340 Ill. 102; *People* v. *New York, Chicago and St. Louis Railroad Co.* 316 id. 452; *People* v. *Pittsburgh, Cincinnati, Chicago and St. Louis Railway Co.* id. 410.) In *People* v. *Chicago and Northwestern Railway Co. supra,* it was said: "The limitation on the power to tax can only be made effective by the application of the maximum rate to the assessed value as both are prescribed at the time the tax is levied. If after a tax levy has been made, one of the factors, the assessed value, may be changed with respect to that levy, the imposition of a maximum rate of taxation which the municipality may not transgress is manifestly futile. The validity of a tax levy must therefore be determined as of the time it was made, for a rule which would permit its validity to be affected by subsequent legislative enactments would introduce intolerable uncertainties and complications in the tax-levying process."

Applying this rule to the instant case, it clearly appears that at the time the original tax levy ordinance was enacted and transmitted to the county clerk, the maximum rate the city of Chicago could legally levy for general corporate purposes was 1.29 and for municipal tuberculosis sanitarium was .07. Those were the only rates under which the county clerk was authorized to spread such taxes against the property in the city of Chicago. They would not produce the sum of $31,925,386.22 levied on April 2, 1934, for general corporate purposes, nor would the authorized rate for tuberculosis sanitarium produce the sum of $1,732,-385.30, as levied. It follows that the excess in the levies over the amount which could then be produced by the legal rates was invalid when levied.

It is equally clear that the effect of Senate Bill 550, and its companion amendment, was to render valid, through the process of re-levy, a levy illegal at its inception. Appellant argues that these are, in effect and in fact, validating acts, while appellee argues that they are enabling acts and that this court has sustained acts permitting the levy of additional taxes. Appellee cites in support of that contention *People* v. *Mills Novelty Co.* 357 Ill. 285. In that case an increased rate of taxation had been authorized during the tax year by an act of the General Assembly. The levies there authorized were to be made during the same tax year the original tax was to be levied. The original levy was wholly legal and the grant of power to levy an additional tax, because of an emergency, was in nowise an attempt to validate an illegal tax. In the case before us the levies for the year 1934 were not authorized by the legislature until July, 1935. These acts sought to authorize an additional levy in the amount of the illegal excess of the original levy of corporate and sanitarium taxes. In *People* v. *Mills Novelty Co. supra,* no illegal tax had been levied which it was sought by legislative enactment to validate.

Under section 10 of article 9 of the constitution, the General Assembly is prohibited from imposing taxes upon

municipal corporations, the property therein or inhabitants thereof, for corporate purposes. In *People* v. *Chicago and Northwestern Railway Co. supra,* this court again announced the oft repeated rule that the validity of a tax levy must be determined at the time it was made and that the General Assembly has no power to increase any particular tax levy after it has been made. This rule was also announced in *People* v. *Illinois Central Railroad Co.* 310 Ill. 212, where it is stated that "The power of the legislature to validate by a curative law any proceeding which it might have authorized in advance is limited to the case of the irregular exercise of power. It cannot cure the want of authority to act at all. * * * 'A tax levied which is not authorized by law is illegal and the legislature cannot validate it by a curative act.' "

While appellee devotes considerable discussion to a claimed distinction between an enabling act and a curative act, we are of the opinion that the record in this case shows these acts to have been passed for the purpose of validating the levies made in excess of the then existing legal rates, which excess was illegal when levied.

Counsel for appellee argue that since this legislation does not, in terms, levy a tax but merely authorizes a maximum, it is not open to the constitutional objections here urged. Whether this be called an enabling act or a validating act, the effect is the same. To say that it merely authorized the levy of over $31,000,000 for corporate purposes in any city having 150,000 inhabitants, a portion of which taxes had already been illegally levied, is to hold that the General Assembly may, with the mere concurrence of the taxing body seeking such illegal additional tax, validate such illegal levy.

We are of the opinion that the effect of these amendatory acts is to attempt to validate a particular illegal tax levy. This the General Assembly has no power to do. (*People* v. *Chicago and Northwestern Railway Co. supra.*)

256

This objection to the excess of the general corporate tax over 1.29, and of the municipal tuberculosis sanitarium tax of over .07, should have been sustained. As, for this reason, the tax complained of is invalid, it becomes unnecessary to consider other constitutional objections raised.

The judgment of the county court is reversed and the cause is remanded, with directions to sustain appellant's objections. *Reversed and remanded, with directions.*