(No. 30347.—

John E. Owens *et al.,* Appellants, *vs.* Dwight H. Green, Individually and as Governor of Illinois, *et al.,* Appellees.

*Opinion filed May 20, 1948—Rehearing denied September 15, 1948.*

G. A. BURESH, of Chicago, for appellants.

GEORGE F. BARRETT, Attorney General, of Springfield, ESSINGTON, McKIBBIN, BEEBE & PRATT, LEDERER, LIVINGSTON, KAHN & ADSIT, CHARLES F. GRIMES, ELMER M. LEESMAN, and ECKERT & PETERSON, (WILLIAM C. WINES, RAYMOND S. SARNOW, JAMES C. MURRAY, OWEN RALL, and WALTER P. STEFFEN, of counsel,) all of Chicago, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

The plaintiffs, John E. Owens and seventy-nine others, as taxpayers, brought an action in the circuit court of Cook County against Dwight H. Green, individually, and as Governor of the State, the Chicago Title and Trust Company, individually, and as trustee under a trust agreement dated October 17, 1946, known as Trust No. 33500, Courts Building Corporation, George S. Lurie, individually, and as president of the corporation, the Treasurer, Director of Finance, Director of Revenue, Director of

the Department of Public Works, each individually, and as officers of the State, Charles J. McKenna, assistant to the Director of Finance, Gilbert E. Keebler, and the Metropolitan Life Insurance Company. John E. Owens, the plaintiff first named, is among those who have withdrawn as parties to this action but the cause continues to be entitled in his name. The relief sought was a decree finding an appropriation of $6,000,000 made by the Appropriation Act of 1945, known as Senate Bill No. 417, (Laws of 1945, pp. 249, 257,) approved July 17, 1945, unconstitutional; that the transaction whereby the sum of $6,000,000 was withdrawn from the treasury of the State and the title to an office building in Chicago, known as the Burnham Building, placed in the Chicago Title and Trust Company, as trustee, be adjudged void and in violation of numerous constitutional and statutory provisions, and that defendants render an accounting, and return the sum of $6,000,000 to the State Treasury. Thereafter, an amended and supplemental complaint was filed. Numerous motions to strike and dismiss plaintiffs' pleading were interposed by the several defendants. On June 9, 1947, a decree was entered denying plaintiffs' motions for discovery, sustaining motions of the defendants to strike counts 1, 2, 3 and 4 of plaintiffs' amended pleading and dismissing these counts and the cause for the want of equity. The plaintiffs prosecute this appeal.

From the pleadings it appears that section 4 of Senate · Bill No. 417 appropriated to the Department of Finance $6,000,000 for: "Acquisition of state office facilities in the city of Chicago through the purchase or construction .of a building or buildings, including the acquisition of the realty upon which such building or buildings are situated." Section 4 appropriated an additional $1,852,690 for other purposes and $300,000 "For contingencies: To cover expenditures for purposes for which the amount appropriated in any item above enumerated is or becomes insufficient."

The Burnham Building is a large office building in Chicago, located at 160 North La Salle Street. The owner of the building in 1945 was the Courts Building Corporation. Plaintiffs are, or were, tenants in the building. On December 2, 1946, the building corporation executed a warranty deed conveying the Burnham Building to the Chicago Title and Trust Company, as trustee, under the provisions of a trust agreement, dated October 17, 1946, known as Trust No. 33500. The deed was caused to be filed in the office of the Recorder of Deeds of Cook County on the day named. On December 31, 1946, the Chicago Title and Trust Company, as trustee, served a notice on the tenants of the Burnham Building notifying them that the building had been sold to it, as trustee; that all leases of space in the building had been assigned to it as of December 31, 1946; that it was entitled to all rents from the building becoming due and payable after December 31, 1946, and notifying the tenants to pay all rents becoming due after January 1, 1947, to the trustee. January 23, 1947, the Chicago Title and Trust Company, as trustee, served another written notice on all tenants in the Burnham Building notifying them that their leases would terminate as of April 30, 1947, and stating that the tenants should deliver possession to the trustee on or before this date.

The sum of $6,000,000, a part of the appropriation made by Senate Bill No. 417, was withdrawn from the treasury of the State and paid to the trustee for the purchase of the Burnham Building. The contract of sale provided that the trustee pay approximately $3,750,000 to the Metropolitan Life Insurance Company to satisfy the first mortgage indebtedness against the property and that the balance be paid to the Courts Building Corporation. The trustee took and holds title to the Burnham Building for the use and benefit of the State of Illinois, as beneficiary of the trust agreement referred to and, since December 31,

1946, has been collecting and receiving rents from the tenants of the building. Out of the proceeds of these rentals the trustee has been paying the current operating expenses of the building, obtaining estimates and entering into contracts for the remodeling of the building, paying agency, managerial and real-estate agent fees to itself, attorneys' fees to special counsel for the trustee, and engineering and architect fees for prospective changes in, and remodeling of, the building to make it available to furnish State office facilities in Chicago.

The foregoing facts are set forth in considerable detail in counts 1 and 2 of plaintiffs' amended and supplemental complaint. The first count charges the appropriations of $6,000,000 and $300,000, previously mentioned, are unconstitutional and illegal and, in particular, that the appropriation of $6,000,000 contravenes section 16 of article V of our constitution, article III and sections 13, 18 and 33 of article IV.

Count 2 adopts the allegations of the first count and makes the additional allegations that since October 17, 1946, the day the trust agreement was executed, the Chicago Title and Trust Company has usurped the sovereign powers of the State, illegally proceeded to act as owner of the Burnham Building in various specified particulars, and that all of the receipts and payments of moneys by the title company have been, and will continue to be, made without any authority or right whatever and are *ex maleficio*. Violations of the following constitutional and statutory provisions are alleged to grow out of the "Trust Agreement" plan: Section 17 of article IV of the constitution; sections 1, 2 and 2a of "An Act in relation to the payment and disposition of moneys received for or on behalf of the State;" (Ill. Rev. Stat. 1947, chap. 127, pars. 170, 171, 172;) section 1 of "An Act in relation to funds or monies received by public officers or agents of public or municipal bodies, by virtue of their offices or positions;"

(Ill. Rev. Stat. 1947, chap. 102, par. 20;) section 28 of the Civil Administrative Code (Ill. Rev. Stat. 1947, chap. 127, par. 28.)

Count 3 charges that, prior to February, 1945, negotiations were had between certain officers of the State and the Courts Building Corporation for the sale of the Burnham Building to the State for $5,000,000; that the Governor declared there would be no real-estate brokerage commission paid on any building purchased by the State; that the State refused to pay $5,000,000 for the building; that further negotiations eventually resulted in an option from the Courts Building Corporation to the State on April 17, 1945, giving the latter the right to purchase the building for $4,850,000; that, on April 26, 1945, defendants, or some two or more of them, conspired together to permit the option to be forfeited and to divert illegally from the State treasury $6,000,000 to purchase the same building; that, subsequent to April 26, 1945, the other defendants approved, ratified and confirmed the conspiracies as conceived and, by their acts, deeds and transactions, contributed to, aided and abetted the consummation of the conspiracy, and that, in the perpetration of the conspiracy, the sum of $6,000,000 was illegally withdrawn from the State treasury and delivered to the Chicago Title and Trust Company in violation of the constitution, the statutes and the public policy of the State of Illinois. Count 3 continues by making allegations, among others, that defendants, with knowledge of the existence of the option, on April 26, 1945, included an appropriation of $6,000,000 in Senate Bill No. 417; that there was nothing in the Appropriation Act to apprise the legislature the amount was to be used for the purchase of the Burnham Building; that, pursuant to the conspiracy, the option to buy the property for $4,850,000 was permitted by defendants to terminate, lapse and be forfeited on April 30, 1945; that two or more of the defendants agreed to defer the con-

summation of the transaction until near the end of December, 1946, to divert any suspicion which might attend the purchase of the building for $6,000,000 within a short time after the expiration of the option to purchase the same property for $4,850,000; that defendants caused to be published in the public press as news items statements to the effect the building would not be sold to the State and the Courts Building Corporation so informed plaintiffs in order to obtain the execution and renewal of various leases at increased rentals; that the defendants who were State officers and agents did not consult with, or seek the advice of, the Attorney General and failed to ask him to prepare necessary contracts or writings relating to the transaction, as prescribed by section 4 of "An Act in regard to attorneys general and state's attorneys" (Ill. Rev. Stat. 1947, chap. 14, par. 4,) but that, instead, the State officers and agents, with the agreement and connivance of the other defendants, prepared and executed various documents, contracts, agreements, deeds, assignment of leases, and other papers for the purpose of consummating the conspiracy, the exact provisions being unknown to plaintiffs since the documents are in the exclusive possession and knowledge of defendants. Motives behind the alleged conspiracy, charged on information and belief, are that the equity of the Courts Building Corporation was represented by shares of stock; that defendants, or some of them, acquired a large number of these shares and expected to make large profits from their sale, and that, in the transaction, there were also to be paid large amounts of moneys to other persons involved, including Lurie for commission, and the attorney for the Chicago Title and Trust Company in this transaction, and the title company for miscellaneous acts apart from any fees for guaranteeing title to the building. The prayer for relief in this count sought a decree finding that a fraud had been committed upon the people of the State; that the trustee be

restrained and enjoined from prosecuting any actions at law or equity against plaintiffs by reason of any pretended ownership of the real estate; that the defendants who are officers or agents of the State be restrained from having any further relations, or transactions, with the trustee, concerning or involving the purported ownership of the Burnham Building by the State of Illinois, whether in trust or otherwise; that the trustee be enjoined from having any further relations, or transactions, with the State or any of its officers concerned with or involving the Burnham Building; that plaintiffs be granted discovery of all documents relating to the facts herein, and that defendants be ordered to file a sworn lists of documents, books, accounts, letters and other paper relevant to the merits of the matters in controversy, which are or have been in their possession or power; that, in the alternative, if the transactions involving the purchase of the Burnham Building are valid, the Chicago Title and Trust Company be required to account and ordered to pay into the State Treasury all rents, issues and profits collected by it from the building.

Count 4 contains allegations that the Director of Finance and his assistant, Charles J. McKenna, contacted several real-estate appraisers in Chicago in an effort to obtain from them a written appraisal of a valuation of $4,850,000, or more, on the Burnham Building; that the appraisers refused to make such an appraisal; that the Director of Finance and his assistant were advised by the appraisers the building was not worth the sum named, and that the two State officers then decided to have no appraisal made. Plaintiffs allege, further, that, on April 1, 1945, and April 1, 1946, the assessor of Cook County fixed the fair and full market value of the building at $2,076,476; that this valuation represented the fair and full market value of the property during the calendar years 1945 and 1946; that the nearby Conway Building, located at 111 West Washington Street, was assessed on April 1,

1944, at $4,591,779 and on April 1, 1945, at $4,441,933; that, in June, 1944, it was sold to the Chicago Title and Trust Company for $4,250,000, or $341,799 less than the full market value of the building, as fixed by the county assessor; that, at the time, the market value of the Conway Building was more than twice that of the Burnham Building, and that these facts were well known to the defendants last named, and that these defendants were advised concerning the valuations placed on the Conway and Burnham buildings by the assessor and were fully informed as to the sale price of the Conway Building. Additional allegations are that, during the pendency of the option to buy the Burnham Building for $4,850,000, defendants McKenna and Lurie ascertained that a bill appropriating $6,000,000 to purchase State building facilities in Chicago had been introduced in the General Assembly; that McKenna, as agent of the Director of Finance, and Lurie, as president and a substantial shareholder of the Courts Building Corporation, conspired, confederated and devised a plan whereby it was agreed that the option of the State to purchase the building would be terminated and cancelled and the appropriation of $6,000,000, when passed by the General Assembly, would be diverted from the State treasury and the entire sum used for the purchase of the Burnham Building; that it was agreed between the two, namely, McKenna and Lurie, that McKenna, as assistant to the Director of Finance, would earmark the appropriation of $6,000,000 for the purchase of the Burnham Building; that the State officers would not look for any other building in Chicago and would not construct any buildings and, before the expiration of the biennium on December 31, 1946, a contract would be entered into between the Director of Finance and the Courts Building Corporation for the purchase of the Burnham Building for $6,000,000; that McKenna and Lurie conspired and agreed it would be necessary to make a series of rent increases in the build-

ing on May 1 and October 1, 1945, and May 1 and October 1, 1946, in order to show a larger capitalized value of the building, and that, pursuant to the conspiracy, the option was cancelled and terminated on April 30, 1945, by McKenna and Lurie. Other allegations along these same lines follow. Plaintiffs next allege that the succeeding Director of Finance, with full knowledge of the provision in Senate Bill No. 417 that "No contract shall be entered into or obligation incurred for any expenditure from any appropriation herein made until after the purpose and amount of such expenditure has been approved in writing by the Governor," did not obtain the approval of the Governor for the expenditure of $6,000,000 for the purchase of the Burnham Building; that the Governor did not, at any time, in writing, approve the purpose or amount of the expenditure, as he was required to do, and that, in furtherance of the conspiracy, after the fourth rent increase had been made in the Burnham Building on October 1, 1946, the Director of Finance, without obtaining any appraisal of the building, and without the knowledge or advice of the Attorney General, as required by statute, or the written approval of the Governor, entered into a written contract with the Courts Building Corporation to purchase the building for $6,000,000. Plaintiffs also alleged that the State Treasurer, in furtherance of the conspiracy, illegally paid out $6,000,000 from the State treasury to the Chicago Title and Trust Company for the purpose of consummating the transaction and that the company accepted this sum for the purchase of the building, likewise in furtherance of the conspiracy.

Concluding allegations of the fourth count are that, prior to the consummation of the conspiracy, the transaction was called to the attention of the Governor by the plaintiffs by a petition signed by approximately 300 taxpayers and tenants; that plaintiffs petitioned the Governor for a conference almost daily from October 22 to

December 31, 1946, whereby they would disclose to him the conspiracy and the wrongful contemplated diversion of $6,000,000 from the State treasury but that, while repeatedly promising to meet with the committee of plaintiffs, the Governor delayed and postponed the meeting until the latter part of December, 1946, when he definitely refused to confer with them. The charge is then made that, by this action, with knowledge of the wrongful acts described, the Governor approved and ratified the conspiracy. The further count concludes by adopting as its prayer for relief those prayers set forth in the first three counts. As recounted, the amended and supplemental complaint was dismissed, and this appeal followed.

Certain plaintiffs, conformably to a motion presented during the pendency of this appeal, have been permitted to withdraw as appellants, without prejudice to the merits of the cause, or as to other appellants.

Seeking a reversal, plaintiffs make and argue numerous contentions. Of these, the general contention that plaintiffs' final pleading sufficiently charges a conspiracy on the part of defendants will be first considered. The complaint, in general terms, charges those defendants who are public officials with unfair, fraudulent and dishonest actions. It abounds in charges that various defendants conspired with one another, but without setting forth adequate facts to make out a conspiracy. In the first place, the presumption obtains that the transactions assailed by plaintiffs are fair and honest and that the actions of the defendant public officials were made in good faith and with honest motives. (*Racine Fuel Co.* v. *Rawlins,* 377 Ill. 375; *Chicago Park Dist.* v. *Herczel & Co.* 373 Ill. 325; *Tribune Co.* v. *Thompson,* 342 Ill. 503.) It is not enough to merely use the terms "fraud" or "fraudulently" for the adequate reason that the unexplained use of these terms alleges nothing. When used, as here, they are generally deemed expletives—words of abuse. (*Dean* v. *Kellogg,* 394 Ill. 495; *Anderson* v.

*Anderson,* 339 Ill. 400.) An allegation of conspiracy, collusion and fraud must show the facts upon which the allegation is based, and a general charge that a party acted fraudulently or was guilty of fraud is a statement of a conclusion and is not good pleading. These general words, unsupported by facts, are, at best, mere vituperation. (*People ex rel. Parker* v. *Board of Appeals,* 367 Ill. 559; *Tribune Co.* v. *Thompson,* 342 Ill. 503; *Doose* v. *Doose,* 300 Ill. 134.) Referring to particular allegations of the complaint, we observe that plaintiffs allege that the Courts Building Corporation gave to the Director of the Department of Finance an option to purchase the Burnham Building for $4,850,000. The insuperable difficulty with allegations relative to what plaintiffs choose to call an option is that the pleadings fail to disclose the building corporation ever gave an option to the Director or to the other defendants. The so-called option amounts merely to a continuing offer, unsupported by consideration, and, this being so, the offer could be withdrawn by the offerer at will, upon notice, at any time before acceptance. (*Threlkeld* v. *Inglett,* 289 Ill. 90.) It is not enough to describe this continuing offer as an option. It is elemental, both as a matter of fact and as a matter of law, that the Courts Building Corporation did not give an option to any of the defendants. Since the corporation had an unfettered right to terminate its offer, the withdrawal of the offer could well have resulted from inability on the part of the State of Illinois to accept the offer for lack of funds or, because of advancing real-estate values, the corporation may, as a matter of good business, have withdrawn the offer for the legitimate purpose of seeking a higher price for its property.

Other allegations relative to the alleged conspiracy place stress upon the fact that the assessed valuation of the Burnham Building on April 1, 1945, and April 1, 1946, was $2,076,476. The assumption that this value was the full

and fair market value of the property in 1945 and 1946 is fallacious. Sections 30 and 43 of the Revenue Act (Ill. Rev. Stat. 1947, chap. 120, pars. 511, 524,) provide that real property in Cook County be assessed for the year 1943 and every fourth year thereafter. Construing plaintiffs' allegations most favorably to themselves, the valuation placed upon the property in 1943 was not necessarily the valuation either on April 1, 1945, or April 1, 1946. This court is well aware and takes judicial notice of the impressive increase in real-estate values during the last few years, particularly during 1945 and 1946. As has been pointedly observed, "Courts are presumed to be no more ignorant than the public generally, and will take judicial notice of that which everyone knows to be true." (*City of Chicago* v. *Murphy*, 313 Ill. 98.) A statement of value predicated entirely upon the assessed valuation as of April 1, 1943, made in the quadrennial assessment of 1943 for tax purposes, affords but a feeble basis for charges of fraud and conspiracy attending the sale of this property three years and nine months afterwards, during a period of constantly higher valuations on real estate. Citation of authority is unnecessary to support the proposition that the assessed value of real estate does not necessarily coincide with either its full and fair value or its market value. Moreover, the assessed value of real property is incompetent in determining its market value. *People* v. *Bain,* 359 Ill. 455; *People* v. *Stevens,* 358 Ill. 391.

Numerous allegations pertain to the motive and intention of the General Assembly. Courts have no right to inquire into the motives of the legislature nor into the wisdom or expedience of an act within its legislative power. *People ex rel. Huempfner* v. *Benson,* 294 Ill. 236.

Defendants' motions, to the extent they sought to strike the complaint upon the ground that plaintiffs' amended and supplemental complaint fails to adequately charge a conspiracy, were properly sustained.

Questions with respect to the constitutional validity of the Appropriation Act of 1945, captioned Senate Bill No. 417, remain to be decided. Plaintiffs contend that the appropriations of $6,000,000 and $300,000, respectively, each violate section 16 of article V of our constitution. This section, so far as relevant, provides, "Bills making appropriations of money out of the treasury shall specify the objects and purposes for which the same are made, and appropriate to them respectively their several amounts in distinct items and sections." Plaintiffs argue that the appropriation of $6,000,000 is not for a specified object and purpose but is, instead, for one or more of several objects and purposes, in the alternative, namely, the purchase of a building already constructed or the construction of a building, and the further alternative, the purchase or the construction of one or more buildings. Plaintiffs assert the appropriation is in a single lump sum, without designating the amount to be used for the purchase or the construction of any one building. The object and purpose of the appropriation is simply stated in the Appropriation Act as the "Acquisition of state office facilities in the city of Chicago through the purchase or construction of a building or buildings, including the acquisition of the realty upon which said building or buildings are situated."

In *Martens* v. *Brady,* 264 Ill. 178, the contention was made that three appropriation acts in appropriating money "for the purpose of building and maintaining State aid roads in the several counties of the State," violated section 16 of article V of the constitution in not specifying the amount for building roads in one item and the amount for maintaining them in another item. Rejecting the argument advanced, this court observed, "Building roads and maintaining them when built are different undertakings, but both are necessary to carry out the general scheme or purpose of the act, which is to provide for better highways

throughout the State. The purpose of the constitutional provision here invoked is to enable the Governor, when passing on appropriation bills, to consider and act on the items of the appropriation separately. In order to carry out the general scheme of the act, however, the building and maintenance of roads are so closely connected that it is difficult to say where one ends and the other begins. * * * We do not think the construction and maintenance of State aid roads constitute separate and distinct items which under the constitutional provision it is required should be separately itemized in the bill making the appropriation. Their relation to the purpose and scheme of the act, and to each other, is so close that it is not to be supposed the Governor would approve of the one and veto the other. Again, the General Assembly, at the time of making the appropriations, could not know the amounts needed or required to first construct the roads and afterwards maintain them."

In *Mitchell* v. *Lowden,* 288 Ill. 327, the contention was made that an appropriation of $60,000,000, to be derived from the sale of bonds, violated section 16 of article V because it failed to specify the objects and purposes for which the appropriation was made, appropriating to such objects and purposes, respectively, their several amounts in distinct items and sections. This court answered, "The single purpose for which the money appropriated is to be used is the construction of the system of roads. There will, perhaps, be many contracts for the construction of parts of the roads, but each contract is not an item which can be separately stated and for which a definite amount can be appropriated. There will, perhaps, be many contracts for the purchase of material and tools, but each contract of purchase is not an item which can be separately stated and for which a definite amount can be appropriated. Nor is the purchase of all of one kind of material such an item. All are items of the aggregate, but the constitu-

tion does not require an itemization, in minute detail, of every expenditure of money in connection with the general purpose for which an appropriation is made. The legislature could not know at the time of making the appropriation, even approximately, the amount required for each of the various contracts or purchases." See: *Lund* v. *Horner*, 375 Ill. 303; *Reif* v. *Barrett*, 355 Ill. 104.

It is evident that obtaining State office facilities in Chicago by purchase and obtaining these same facilities by construction are closely related, in fact, interdependent, as the General Assembly could hardly know in advance whether it would be more practicable to purchase or construct the desired facilities. The mode of accomplishing the single general purpose of providing State office facilities in Chicago is stated in the alternative as a common-sense mode of procedure. The appropriation of $6,000,000 is not subject to the constitutional attack levelled against it merely because the manner of attaining a single purpose, namely, acquiring State office facilities, is stated in the alternative. The appropriation attacked is not vulnerable upon the ground that it is for several items or purposes instead of a single object and purpose, as required by section 16 of article V.

Plaintiffs contend, further, that the Appropriation Act transcends article III of our constitution which provides for the division of powers of our State government among the legislative, executive and judicial departments. The assertion is made that the Appropriation Act attempts to vest in the State officers, members of the executive department, discretion to determine whether the money shall be used for the purchase of a building or buildings, or the construction of a building or buildings, and that the function delegated is legislative. A statute which vests in administrative officers a discretion not only as to the administration of the enactment but, also, the determination of what the law is, or the right to apply it to one and refuse

its application to another in like circumstances, constitutes an unwarranted delegation of legislative authority. (*Malloy* v. *City of Chicago*, 365 Ill. 604; *Peabody* v. *Russel*, 302 Ill. 111.) On the other hand, the legislature may delegate to others the power to do those things which it might properly but cannot understandingly or advantageously do itself, and it may confer an authority or discretion as to the execution of the law, to be exercised under and in pursuance of the law. (*Parks* v. *Libby-Owens-Ford Glass Co.* 360 Ill. 130; *Welton* v. *Hamilton*, 344 Ill. 82; *Sheldon* v. *Hoyne*, 261 Ill. 222.) In the present case, authority or discretion as to the execution of the Appropriation Act was conferred upon the Department of Finance for the adequate reason that the General Assembly could not conveniently attend to the details of execution of its own enactment. The Appropriation Act does not violate article III of the constitution.

Plaintiffs next contend that the Appropriation Act violates section 33 of article IV, which ordains, "The general assembly shall not appropriate out of the state treasury, or expend on account of the new capitol grounds, and construction, completion, and furnishing of the state house, a sum exceeding, in the aggregate, $3,500,000, inclusive of all appropriations heretofore made, without first submitting the proposition for an additional expenditure to the legal voters of the state, at a general election; nor unless a majority of all the votes cast at such election shall be for the proposed additional expenditure." Plaintiffs' argument in this regard is that a building for the housing of State office facilities is nothing more or less than a State house and that, in any event, the quoted constitutional provision "should not be given such a narrow construction as to nullify the intent and purpose clearly intended." The obvious application of section 33 of article IV is solely to appropriations on account of the new capitol grounds and the construction, completion and furnishing of a State

house. Plaintiffs' allegations disclose that the appropriation involved here is neither for capitol grounds nor for the construction, completion and furnishing of the State house. The capitol building at Springfield is the State house and the term "State house" is ordinarily deemed to mean the building in which the State legislative body sits; a State capitol. (Webster's New International Dictionary, 2d ed.) It is a matter of common knowledge of which judicial notice may be taken that the General Assembly meets, and that the State house is, in Springfield. (*City of Chicago* v. *Murphy,* 313 Ill. 98; *Harding* v. *Strong,* 42 Ill. 148.) Manifestly, "State office facilities in Chicago" is not synonymous with "the new capitol grounds" or the "State house." The contention that the Appropriation Act assailed contravenes section 33 of article IV is devoid of merit.

By their final pleading, plaintiffs alleged that the Appropriation Act violates section 13 of article IV of the constitution. Their original brief ignores this point except for a single reference in a summary of the pleadings, and we find the issue argued for the first time in plaintiffs' reply brief. The point has been waived.

Plaintiffs contend, further, that the entire transaction, including all agreements, contracts, the trust agreement, deeds and other documents violate several constitutional and statutory provisions. They urge that the transaction violates section 17 of article IV of the constitution providing, "No money shall be drawn from the treasury except in pursuance of an appropriation made by law, and on the presentation of a warrant issued by the auditor thereon; and no money shall be diverted from any appropriation made for any purpose, or taken from any fund whatever, either by joint or separate resolution." Plaintiffs' argument is largely a play on words. They say that the appropriation of $6,000,000 is for the acquisition of State office facilities through the purchase or construction of a build-

ing or buildings, including the realty, and not for the purchase of a "trust agreement." This argument rests upon the fact that title to the Burnham Building was conveyed to the Chicago Title and Trust Company, as trustee, and that the money appropriated was not used for the purchase of a building for the State of Illinois, since the Chicago Title and Trust Company, and not the State, is the owner of the building. From this, plaintiffs insist that the money withdrawn from the State Treasury was used for a purpose different from the purpose for which it was appropriated, rendering the entire transaction null and void. The allegations of the complaint affirmatively disclose that the State office facilities in Chicago have been acquired. The fact that, solely for purposes of convenience, title to the building has been placed in a trustee misses the point. As a practical matter, the State itself could not very well convert the Burnham Building for occupancy as State office facilities without the medium of an agent. Plaintiffs have not directed us to any constitutional inhibition limiting the power of the State with respect to taking title in trust and, in particular, in taking title in the name of a trustee, as here, with active duties, to put the building in such condition that the State might use it as a building for State office facilities. A concession that the Appropriation Act did not specifically authorize title to be taken in trust would not aid plaintiffs. The Appropriation Act necessarily empowers the Director of Finance to have title taken in trust. An express grant of power or duty to do a particular thing includes the express grant of power to do all that is reasonably necessary to execute the power or duty. (*Townsend* v. *Gash*, 267 Ill. 578.) Apart from this basic principle, the word "purchase" employed in the Appropriation Act, in its enlarged and legal signification, is sufficiently comprehensive to include every mode of acquiring real estate known to the law, except that by which an heir, on the death of his ancestor, becomes substituted in the latter's

place by operation of law. (*Moran* v. *Union Bank,* 352 Ill. 503; *Chicago and Eastern Illinois Railroad Co.* v. *Doyle,* 256 Ill. 514.) The appropriation was for the purpose of acquiring State office facilities in Chicago through the purchase or construction of a building or buildings, including the acquisition of the realty upon which the building or buildings were situated. "Purchase" would necessarily include acquisition of the title in trust by the State as a practical method of obtaining title for and in behalf of the State, thereby giving the State the equitable title to the property.

Apart from the fact that plaintiffs' allegations fail to disclose any diversion of the money appropriated for the purpose of acquiring State office facilities in Chicago, section 17 of article IV has been held to be directed at diversion of moneys appropriated by the General Assembly, either by joint or separate resolution. *Burritt* v. *Comrs. of State Contracts,* 120 Ill. 322.

Although plaintiffs' complaint does not so charge, they now contend that the transaction in controversy violates section 208 of division I of the Criminal Code (Ill. Rev. Stat. 1947, chap. 38, par. 449,) and section 2 of "An Act to punish fraud or extravagance in the expenditure of moneys appropriated for public improvements." (Ill. Rev. Stat. 1947, chap. 38, par. 451.) Since these points are being urged for the first time upon review, they are not open to consideration.

The next contention made and argued is that the transaction violates section 2 of "An Act in relation to the payment and disposition of moneys received for or on behalf of the State." (Ill. Rev. Stat. 1947, chap. 127, par. 170.) This act applies to the officers of the executive department of the State government, the clerk of the Supreme Court, the departments of the State government, and all other officers, boards, commissions, commissioners, departments, institutions, arms or agencies of the execu-

tive department of the State government, except the University of Illinois. Section 2 provides that it shall be the duty of every officer, board, commission, commissioner, department, institution, arm or agency brought within the provisions of the statute by section 1, to keep in proper books a detailed itemized account of all moneys received for or on behalf of the State and pay into the State treasury the gross amount of money so received without delay. Section 2 provides further that no money belonging to or left for the use of the State shall be expended or applied, except in consequence of an appropriation made by law and upon the warrant of the State Auditor. Section 1, as amended in 1947, (Laws of 1947, p. 1682,) expressly excepts from the operation of this act moneys received for or on behalf of the State by the Department of Finance in connection with the operation, management and maintenance of State-owned office buildings in Chicago. The amendment to section 1 renders section 2 inapplicable to the present situation. *Green* v. *Black,* 352 Ill. 623.

Plaintiffs next contend that the transaction violates section 28 of the Civil Administrative Code, (Ill. Rev. Stat. 1947, chap. 127, par. 28,) which prescribes that contracts for the construction of buildings for the various departments, or for other construction work in or about buildings, exceeding the estimated value of $1000 shall be let to the lowest responsible bidder. Plaintiffs assert that the agreement for carrying the challenged transaction into effect provided that the trustee would purchase coal for the heating of the building as a private owner of any building, without advertising for bids and without letting the contract to the lowest bidder, and that the trustee would remove the partition walls of the building and remodel the building to make it adaptable for State office facilities, without advertising for bidders on the contracts and without letting them to the lowest bidders. Recourse to the complaint fails to disclose any allegation of facts showing either a violation

or a threatened violation of the statutory provision now invoked by plaintiffs. The statements made in their brief to which reference has been made cannot serve as allegations that should have been made in the complaint in the first instance.

Any possible constitutional or statutory doubt cast upon the purchase of the Burnham Building has been removed by an amendment, in the nature of a validating act, to the Civil Administrative Code (Laws of 1947, pp. 1637 ff; Ill. Rev. Stat. 1947, chap. 127, par. 36,) which provides, in part: "With the consent of the Governor, the Department [of Finance] may contract with a responsible person, corporation, firm or trust company skilled in the business of office building management, operation and maintenance, for the management, operation and maintenance of said office building, and in connection therewith it may permit the operation, management and maintenance thereof pursuant to the trust agreement entered into under authority of the appropriation of the Sixty-fourth General Assembly for the acquisition of State office facilities in the City of Chicago. Any such person, corporation, firm or trust company with whom such contract has been or may be entered into shall, under the supervision, and subject to the direction and control of the Department, have authority to exercise the powers and duties herein prescribed." Where there is no constitutional prohibition, the legislature may, by curative act, validate any proceeding which it might have authorized in advance. (*Krause* v. *Peoria Housing Authority,* 370 Ill. 356; *People ex rel. Shipton* v. *Dunleith and Dubuque Bridge Co.* 322 Ill. 99; *People ex rel. Pillsbury* v. *Edvander,* 304 Ill. 400; *People ex rel. Vautrin* v. *Madison,* 280 Ill. 96.) Ratification is as effective in establishing the duties, rights and liabilities of an agency as if the acts ratified had been fully authorized in the first instance. (*Larsen* v. *Thuringia American Ins. Co.* 208 Ill. 166.) The principal, if not the only, exception to

legislative power to ratify, an exception not material to the present inquiry, is in tax-levy cases where section 10 of article IX of the constitution precludes the enactment of a valid curative act. *People ex rel. Gill* v. *Baum, 367* Ill. 249.

Plaintiffs maintain that the Validating Act is unconstitutional, among other reasons, because it embraces in the body of the act a subject or subjects not expressed in the title, contrary to section 13 of article IV which provides, so far as pertinent, "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." The Validating Act is an amendment to section 36 of the Civil Administrative Code. The title of the Validating Act of 1947 is "An Act to amend section 36 of 'An Act in relation to the civil administration of the State government, and to repeal certain acts therein named,' approved March 7, 1917, as amended." Paragraph 14 of section 36 is inserted in the Validating Act and the subsequent paragraphs are renumbered. In other respects, section 36 remains the same as before the amendment. The applicable rule is that if a provision of a statute tends legitimately to accomplish the general objects of the act, the provision does not violate the constitutional requirement that no act shall embrace more than one subject and that such subject shall be embraced in the title. (*People* v. *Chicago Transit Authority,* 392 Ill. 77; *People ex rel. Greening* v. *Green,* 382 Ill. 577.) Again, "If by fair intendment the provisions in the body of the act have a necessary or proper connection with the title the act is not open to this constitutional objection." (*State of Illinois* v. *Milauskas,* 318 Ill. 198.) The Validating Act of 1947 does not offend section 13 of article IV of the constitution.

Plaintiffs also contend that the Validating Act violates

article III of the constitution in attempting to invest the Department of Finance with legislative functions. They point out that the act purports to give the Department of Finance, with the consent of the Governor, the right to make a contract with any person or persons, firm or corporation, for the management, operation and maintenance of the Burnham Building, without providing any qualification or rules by which the selection is to be governed. Our disposition of the same constitutional objection leveled against the Appropriation Act is decisive of plaintiff's contention, so far as the Validating Act of 1947 is concerned. Procuring State office facilities in Chicago by purchasing an existing building and placing it in suitable condition for occupancy by the State offices does not divest the General Assembly of its function of deciding what the law is, but merely authorizes others to perform certain acts which the legislature has decided it could not understandingly or advantageously do itself.

Plaintiffs claim that the Validating Act violates section 22 of article IV prohibiting the General Assembly from passing local or special laws "Granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever." The same privilege applies to any corporation or person. An examination of the act discloses that no individual or corporation is given any special privileges. The Validating Act does not mention the Chicago Title and Trust Company by name. The Department of Finance, or its Director, is granted discretion to employ any trust company or corporation. Whether a law is general, local or special, does not depend upon the number of things within the scope of its operation. A law may be general, irrespective of the fact that it operates only in a single place or upon a particular class of persons or things, provided there is a reasonable basis for the classification and every person or place brought within the relations or circumstances

described is affected by the law. (*People* v. *City of Chicago,* 349 Ill. 304.) It is not necessary that an act operate in every place or upon every person in the State in order to be a general law. (*Hunt* v. *Rosenbaum Grain Corp.* 355 Ill. 504.) These principles are applicable to curative acts. (*People ex rel. Dougherty* v. *City of Rock Island,* 271 Ill. 412.) The Validating Act is not unconstitutional as special legislation.

Section 22 of article IV, as plaintiffs point out, also provides, "In all other cases where a general law can be made applicable, no special laws shall be enacted." This provision is addressed only to the General Assembly, and the legislature's reaction to it is not subject to judicial inquiry. As observed in *People ex rel. Brady* v. *La Salle Street Trust and Savings Bank,* 269 Ill. 518, "This general provision of the constitution is addressed to the judgment and discretion of the legislature, which are not reviewable by the courts." See: *People* v. *Dunn,* 255 Ill. 289.

An additional attack is made against the· Validating Act upon the ground that it contravenes section 19 of article IV of the constitution which provides, "The general assembly shall never grant or authorize extra compensation, fee or allowance to any public officer, agent, servant or contractor, after service has been rendered or a contract made, nor authorize the payment of any claim, or part thereof, hereafter created against the state under any agreement or contract made without express authority of law; and all such unauthorized agreement or contracts shall be null and void." Plaintiffs' pleadings do not contain any allegation of any extra compensation, fee or allowance to the defendant Chicago Title and Trust Company, as trustee. We are of the opinion that plaintiffs' pleading fails to adequately allege a violation of the constitutional provision invoked.

Under another Validating Act (Laws of 1947, p. 1682,) entitled, "An Act to amend Section 1 of 'An Act in rela-

tion to the payment and disposition of moneys received for or on behalf of the State,' approved June 9, 1911, as amended," it is provided that the act shall not apply to moneys received for or on behalf of the State by the Department of Finance in connection with the operation, management and maintenance of State-owned office buildings in the city of Chicago. Plaintiffs insist that this act is a special and local law applicable only to State-owned office buildings in Chicago, and as there is only one building to which it could apply, namely, the Burnham Building, section 22 of article IV of the constitution is violated. Our disposition of the same contention made against the Validating Act of 1947 (Laws of 1947, p. 1637,) applies with like force here.

The motion of three defendants for leave to file an answer to plaintiff's reply brief *instanter* has been taken with the case. In their reply brief, plaintiffs raised for the first time the question, among others, of the constitutional validity of the two validating acts of 1947. Both of these acts became effective subsequent to the entry of the decree on June 9, 1947. Defendants have placed reliance upon these statutes to sustain the decree. Answering, plaintiffs attacked the constitutionality of the statutes. In fairness, defendants should be granted an opportunity to answer the points properly made by plaintiffs for the first time in their reply brief. To accomplish this one purpose, defendants' motion is allowed.

Plaintiffs, in their reply brief, make the following concession with respect to the validating acts of 1947, "If they are valid, and sufficiently comprehensive to validate the transaction, then it is immaterial whether the original transaction was valid or invalid." The curative acts. are not subject to the charges of unconstitutionality made against them.

For the first time, in their reply brief, plaintiffs challenge the constitutionality of "An Act to add Section 6h

to 'An Act in relation to State Finance,' approved June 10, 1919, as amended," (Laws of 1947, p. 1711,) and two appropriation acts, known as House Bills No. 827 (Laws of 1947, p. 105,) and No. 828 (Laws of 1947, p. 104.) The attack upon these three acts is unwarranted as a reply to any part of defendants' brief. Plaintiffs are not in a position to urge the points advanced, so far as these three statutes are concerned, and any complaint on their part in this regard is deemed waived.

Finally, plaintiffs contend, as they charged in their pleading, that the Director of Finance failed and neglected to obtain from the Governor an approval in writing for the expenditure of $6,000,000 for the purchase of the Burnhame Building and that the Governor did not, at any time, in writing approve the purpose or amount of the expenditure, as he was required to do by section 14 of the Appropriation Act referred to as Senate Bill No. 417. The Governor has joined in a motion to dismiss the complaint and, from this, it would appear that he approved the expenditure of the money for the purchase of the Burnham Building. Even if the allegation be conceded to be true, the Validating Act of 1947 is a sufficient answer to this final contention of plaintiffs. The General Assembly could have enacted the Appropriation Act without the provision requiring approval of expenditures by the Governor. Since the legislature can, by a curative act, approve what it could have approved in the first place, it follows that the Validating Act of 1947 cures any possible defect existing by failure of the Governor to approve any of the expenditures incident to the purchase of the Burnham Building.

We are not unmindful of the motion made by the defendant State officers who have consistently contended throughout the litigation that this action is, in substance, one against the State of Illinois, contrary to section 26 of article IV of the constitution: "The state of Illinois shall never be made defendant in any court of law or equity."

Where an action at law or suit in equity is brought against a State officer or the director of a department upon the ground that, while claiming to act for the State, he violates or invades the personal and property rights of the plaintiffs under an unconstitutional act, or assumes authority which he does not have, the action is not against the State. The presumption obtains that the State, or a department of the State, will not, and does not, violate its constitution and laws, but that the violation, if it occurs, is by a State officer or the head of a department of the State, and the officer or head may be restrained by appropriate action instituted by a citizen. (*Schwing* v. *Miles,* 367 Ill. 436; *Noorman* v. *Department of Public Works and Buildings,* 366 Ill. 216.) We are of the opinion that the present action is one against the defendant State officers and not against the State of Illinois and that, consequently, the State is not an indispensable party, as contended by defendants.

The decree of the circuit court of Cook County is affirmed.

*Decree affirmed.*