**Kenneth W. SMITH, Appellant,**

**v.**

**KENTUCKY STATE RACING COMMISSION and Kentucky Harness Racing Commission, Appellees.**

Court of Appeals of Kentucky.

June 14, 1985.

Discretionary Review Denied and Opinion Ordered Published by Supreme Court Oct. 22, 1985.

John M. Berry, Jr., Berry & Floyd, New Castle, for appellant.

David L. Armstrong, Atty. Gen., George Geoghegan, III, Asst. Deputy Atty. Gen., Sarah M. Jackson, Asst. Atty. Gen., Frankfort, for appellees.

Before COOPER, HOWERTON and LESTER, JJ.

LESTER, Judge.

This is an appeal from a summary judgment denying a mandatory injunction which would have required appellees to pay for certain laboratory and testing services out of private rather than public funds expended in connection with the horse racing industry.

To employ a modern-day colloquialism, the "bottom line" of this appeal is who is going to pay for the detection and prevention of the use of drugs, stimulants and improper devices in horse races—the industry or the public? The lower court determined the public should, hence, their representative, taxpayer Smith, appeals.

From the time of her admission to the Union, citizens of this great Commonwealth have regarded, not from a lack of national patriotism, the call to the colors as meaning an abiding interest in horse racing as now symbolized by the Bluegrass Stakes, the Jim Beam Spiral Stakes, the twin spires of Churchill Downs, and that greatest of all sporting events, The Kentucky Derby. In such an industry, fortunes are made or lost in but a few brief moments on the chance that one's particular selection will win, place or show. In an effort to insure that more would be won than lost, certain entrepreneurs devised a scheme whereby drugs, stimulants, or other devices would be administered to horses thereby giving certain advantages in passing the finish line in a first, second, or third position.

In order to thwart these devious undertakings, the 1960 General Assembly enacted KRS 230.240(1) and (3). In part, the first section mandated:

The commission shall promulgate rules and regulations for effectively preventing the use of improper devices, the administration of drugs or stimulants or other improper acts for the purpose of affecting the speed or health of horses in races in which they are to participate, and in connection therewith the commission is authorized to acquire, operate and maintain, or to provide by contract for the maintenance and operation of, a test-

ing laboratory and related facilities, for the purpose of saliva, urine or other tests, and to purchase supplies and equipment for and in connection with such laboratory or testing processes. The expense of the laboratory or other testing processes, whether furnished by contract or otherwise, together with all supplies and equipment used in connection therewith, shall be paid by the various associations licensed under KRS 230.210 to 230.360 in such manner and in such proportions as the commission may by rule provide.

while the later subsection required:

Each person, as a condition precedent to the privilege of receiving a license under KRS 230.210 to 230.360 to conduct a thoroughbred race meeting, shall be deemed to have agreed that it will pay such expenses and compensation as provided in this section and as may be actually and reasonably incurred.

The foregoing statutory provisions applied to the normal horse racing industry, but by 1974 there developed a tangent but related event, the harness races, which also generated a desire to win considerable sums. In order to dispel the potential evils that arose with regular horse racing, the Legislature created the Kentucky Harness Racing Commission as well as enacting KRS 230.660(1) and (3) which contained identical language as that quoted above only applicable to the sulky events.

1982 brought a re-enactment of subsection (1) of KRS 230.260 by creating a new subsection. However, the content remains the same as the specific sentences which concern us in this litigation are embodied in KRS 230.240(2) so that it now appears as follows:

The commission shall promulgate rules and regulations for effectively preventing the use of improper devices, the administration of drugs or stimulants or other improper acts for the purpose of affecting the speed or health of horses in races in which they are to participate, and in connection therewith the commission is authorized to acquire, operate and

maintain, or to provide by contract for the maintenance and operation of, a testing laboratory and related facilities, for the purpose of saliva, urine or other tests, and to purchase supplies and equipment for and in connection with such laboratory or testing processes. The expense of the laboratory or other testing processes, whether furnished by contract or otherwise, together with all supplies and equipment used in connection therewith, shall be paid by the various associations licensed under KRS 230.210 to 230.360 in such manner and in such proportions as the commission may by rule provide.

Former subsection (3) is now (4) but remains unchanged.

The record does not reveal how the commissions paid for their drug detection and testing services in the past, but recently, at least, according to the complaint, they expended public funds which were budgeted for those purposes in 1974 through an appropriation bill. This disturbed taxpayer Smith who commenced this action in 1984 to stop this course of financial conduct, seeking to place the costs upon the "various associations licensed under KRS 230.-210 to 230.360" and their counterparts in the harness racing category. It is evident that the Franklin Circuit Court disagreed with appellant for he now addresses his arguments to this court.

The lower tribunal, relying on several leading cases dealing with statutory construction, *George v. Scent,* Ky., 346 S.W.2d 784 (1961), *Bischoff v. Hennessey,* Ky., 251 S.W.2d 582 (1952), and *Skaggs v. Fyffe,* 226 Ky. 337, 98 S.W.2d 884 (1936), sought to give the statute meaning to the effect that the commissions may adopt a rule absolving the licensed associations from paying for the services and putting that burden upon public funds. The court fortified its view with observing that the General Assembly had appropriated funds for that purpose as well as enacting KRS 230.265 providing for an equine research council. From these two acts, the court concluded:

By appropriating the funds to the defendants from 1974 through 1982, and by adopting KRS 230.265, the General Assembly has ratified the manner in which these defendants have interpreted KRS Chapter 230 and more specifically KRS 230.240 and KRS 230.660. (citing *Owens v. Green,* 400 Ill. 380, 81 N.E.2d 149 (1948)).

As appellant so aptly points out, *George* and *Bischoff, supra,* have no application if there are no conflicting provisions or ambiguities in the statute under review, and, if such exist, we fail to perceive them in KRS 230.240(2). The subsection is composed of two sentences, the first of which directs the commissions to provide by appropriate regulatory action the detection of certain abuses and the acquisition and operation of testing facilities. In other words, the General Assembly told the administrative agency what to do in an effort to halt the use of prohibited substances and devices in the industry. The second sentence tells the agency that the laboratory "shall be paid by the various associations" licensed by law "in such a manner and in such proportions as the commission may be rule provide." This tells the agency how to finance the program provided for in the first sentence. This subsection means nothing more than what was said by the Legislature.

The appellees put great emphasis on the last phrase of the statute arguing that "in such manner and in such proportions as the commission may by rule provide" allows the appellees to utilize public funds. We disagree because we view the language as meaning that the *licensed associations* "shall" bear the expenses and the commission "may by rule" allocate the proportions each *association* must pay. (emphasis added). Uniquely enough, examination of Titles 810 and 811 KAR demonstrates that even though the commissions adopted rather comprehensive regulations (810 KAR 1:081 and 811 KAR 1:090) dealing with medication testing procedures they never provided for the method of payment—either by public or private funds.

**156**

We totally agree with the trial judge that "a budget bill may not be used to repeal a statute" which, from the standpoint of appellees' ratification argument, would be the effect if we held to the contrary. If the General Assembly had concluded to fund the objects of the statute with public monies, it could have amended KRS 230.240 and 230.660 in 1982 when it re-enacted the statutes. It did not do so and cannot do so by an appropriation act.

If we were to agree with the appellees' position, then we, in effect, would be repealing subsection (4) of KRS 230.240 and subsection (3) of KRS 230.660 for they provide that as a condition precedent to being licensed to conduct races each applicant must agree to pay the expenses and compensation provided for in the previous subsections. Again, if the Legislature were so inclined it would have omitted this provision in its 1982 re-enactment.

KRS 230.265 has no bearing upon this cause for we agree with the conclusion reached by the Attorney General's Office when in 1983 it expressed the view that this statute created a Kentucky Equine Drug Research Council to conduct *research only* which had no connection with the duties and services provided for in KRS 230.240(2) (OAG 83–440).

The judgment is reversed with directions to the circuit court to set aside the entry of June 21, 1984, and sustain the appellant's motion for summary judgment.

All concur.